## Davidson *versus* Little and Others.

1. A conveyance of land, free from actual fraud, is not void merely because the price was shockingly inadequate.

2. Though an unexecuted contract will not be enforced in a Court of Equity, if it seems to be unconscionable, yet after it is executed by the parties it will not be declared void on that ground alone, except in the case of an heir expectant.

3. An heir in tail who is entitled to immediate possession of one-half of the land, and to the other half on the death of a tenant by the curtesy, is not an heir expectant.

4. Gross inadequacy of price is only *evidence of fraud.*

5. But even if the conveyance were void for gross inadequacy of price, it cannot be disputed by mere possessors of the land without title, neither the party who conveyed, nor any one claiming under him, nor his creditors disputing it.

ERROR to the Common Pleas of *Fayette county.*

This was an action of ejectment instituted in February 1849, in favor of James B. Davidson *v.* Hope Little, John Bradman, and Aaron Moore, for about 160 acres of land in Luzerne township, Fayette county. Hope Little died before the trial.

The plaintiff claimed under a conveyance from Aaron Norris.

On the trial he showed title from the Commonwealth in Thomas Scott, to a tract of land containing 307½ acres and allowance, of which the land in controversy was a part; also a deed by Thomas Scott to Esther Little, for the whole tract during her natural life,

x·2

[Davidson v. Little.]

with cross remainders *in fee tail* to Fanny Little and Abraham Little, dated November 21, 1791.

The death of Abraham Little without issue (his widow and devisee was Hope Little).

The marriage of Fanny Little, *first,* to David Norris, by whom she had as her eldest son David Norris, the younger, who died, leaving his eldest son Aaron Norris, with a younger brother and several sisters. Fanny afterwards married John Harper, who yet survived her, and held the moiety of the land as tenant by the curtesy.

Also deed by Aaron Norris *to the plaintiff in fee,* to bar the entail; dated October 21, 1847, for the whole tract. Consideration stated $350. Duly acknowledged and recorded, as directed by the Act of Assembly of 16th January, 1799.

The defendants did not show any title in themselves, but under a rule of Court there was filed on the 31st of August, 1850, an abstract of title, wherein Hope Little, one of the defendants, claimed the possession of *one-third* of the land as widow of Abraham Little, who held under a deed from Thomas Scott. She claimed also absolute title and right to the possession of the whole property by deed from Aaron Norris, dated February 14, 1850 (this suit was brought February 13, 1849), which said Norris was alleged to be sole heir *to the fee simple of the land,* under the aforesaid deed of conveyance from Thomas Scott. Defendants also claimed right of possession as against plaintiff, who it was alleged had neither right of possession nor any other right, but whose title, whatever it may be, was alleged to be fraudulent."

On the 7th of June, 1851, after plaintiff had taken several depositions proving the legitimate descent of Aaron Norris, as the heir in tail, the defendants, on leave given, *amended* their abstract by striking out the words in *italics* and claiming Aaron Norris to be the sole heir *in tail,* and that the deed of February 14, 1850, was *in fee to bar entail.*

Upon the trial the case was made to turn upon the questions:— 1st. Whether the plaintiff's deed from Aaron Norris was obtained by actual fraud. 2d. Whether the price paid him by the plaintiff for the land, was so grossly inadequate as to make the contract unconscionable and void.

It was testified on part of the plaintiff, that before Aaron Norris conveyed to Davidson, the plaintiff, he took the advice of counsel as to the title, and was advised that he was sole heir in tail to the premises in dispute; entitled to the Hope Little part at once, and to the Harper part at the death of John Harper, who was tenant by the curtesy.

It was testified that before conveying to the plaintiff, he had

[Davidson *v.* Little.]

applied to others to purchase, and that he said he was not able to go to law about the property, and was thinking of going to the west; that he valued the property at from $8000 to $10,000. It did not appear that he took any part *in the defence.*

As to the amount paid by the plaintiff, it was proved that he had paid $200 at the date of the deed, and given bond to pay $150 more at some future period, when he recovered the land.

After the evidence had closed, the *defendants* paid into Court for the plaintiff, $252, debt and interest on the amount paid by plaintiff to Aaron Norris.

The defendants' counsel requested the Court to instruct the jury :—

1st. That if they are satisfied that there was fraud by the plaintiff, in taking advantage of the ignorance or weakness of Norris, their verdict must be for the defendants on that ground, without requiring them to refund the plaintiff's money and interest.

2d. That the inadequacy of price paid the plaintiff is so gross as to shock a correct mind, and is evidence of that presumptive fraud which vitiates the contract; and upon this ground alone, although the jury are not satisfied there was actual fraud, the verdict must be for defendants. But if the jury find on this ground, they must say that defendants shall refund the plaintiff the money he has paid with interest.

3d. That plaintiff's contract and deed embracing the whole land, one-half of which being an expectancy in fee tail upon the death of John Harper, the contract is void, unless the plaintiff has shown that he has paid a full and fair price; that plaintiff has not shown this, and therefore cannot recover.

The answers of GILMORE, J., were as follows :—

" To the first point he charged, that if there was actual fraud practised by plaintiff in procuring the conveyance, then the law is as stated in this point. But actual fraud must be proved, and cannot be presumed. If the jury are satisfied that Aaron Norris either from ignorance or weakness was incapable of comprehending his rights, or the plaintiff in the transaction was guilty of misrepresentation, or withheld facts which he was bound to communicate, this would constitute actual fraud.

" To the 2d : We are of opinion that notwithstanding the possession was not delivered, and is now resisted, yet that this is an executed contract, and that therefore, according to all the authorities, mere inadequacy of price is insufficient to set it aside and rescind the contract. But the Court charge that there may be such gross inequality between the price given and the property conveyed, as would amount to presumptive or legal fraud, although the jury might be fully satisfied that there was no actual fraud in the whole transaction. But this inadequacy must be such as would

[Davidson *v.* Little.].

confound and shock the judgment of every man of common sense, and would produce surprise on hearing that such a contract had been made. If you believe that in respect to this case, the land was worth twenty times as much as was given for it, or ten times as much (unless this great inequality was produced by some supposed or anticipated defect of the title, such as a supposed or suspected illegitimacy), then the inequality would create a presumptive fraud which would avoid the conveyance; and the defendants having paid into Court the amount actually paid by plaintiff, with interest, the plaintiff would not be entitled to recover.

" To the 3d : In answer to this point we say, that dealings with young heirs for reversionary interests are to be watched with the utmost jealousy, and form another exception to the general rule, that an executed contract cannot be set aside for mere inadequacy of price; and where this is the case, inequality of price is sufficient to set aside a conveyance. Here, a part of the interest was still reversionary, and the heir was not more than 23 years old, having been born on the 10th of May, 1824, and the deed executed on the 21st of October, 1847. This instruction is likewise subject to the fact whether this inequality was occasioned in consequence of a doubt as to the title, and there could be no other doubt unless it was created by a suspicion as to the legitimacy of the father of Aaron Norris, who was David Norris, jr.; and on this point we have already referred you to the evidence. Osgood *v.* Franklin, 2 *Johns. Ch. R.* 25; Evans *v.* Peacock, 16 *Ves.* 512."

To which charge both plaintiff and defendants excepted.

January, 1852, verdict was rendered generally for the defendants.

The following were the assignments of error :—

The jury having cleared the case of *actual fraud*, the answer of the Court to the *first point* may be assumed to be correct.

The whole of the *answer* to the 2d *point* is erroneous; especially in that the Court, although conceding that this is a case of a contract executed, and therefore not voidable upon mere inadequacy of price; yet says "that there may be such gross inequality between the price given and the property conveyed, as would amount to presumptive or legal fraud, although the jury might be fully satisfied that there was no actual fraud in the whole transaction." And again : " If you believe that in respect to this case, the land was worth 20 times as much as was given for it, or ten times as much (unless, &c.), then the inequality would create a presumptive fraud, which would avoid the conveyance, &c.

The Court erred in their *answer* to the 3d *point*, in saying that " dealings with young heirs for reversionary interests form another

[Davidson *v.* Little.]

*exception* to the general rule, that an executed contract cannot be set aside for mere inadequacy; and where this is the case, *inequality of price* is sufficient to set aside the conveyance."

*Howell, Flenniken,* and *Veech,* for the plaintiff in error.—It was said that the case was clear of actual fraud, not only by the testimony adduced at the trial, but by the verdict. That the vendor was of mature age. That it was conceded by the Court that this being a contract executed, was not voidable for mere inadequacy of price; but it was charged that there may be such gross inequality between the price and the property, as will amount to presumptive or legal fraud. It was contended that in this there was error, and there was cited 3 *Cowen* 532–3, and cases there cited. Reference was also made to 1 *Ch. Cases* 41, Parker *v.* Palmer; 2 *Vern.* 521–3, City of London *v.* Richmond; 1 *Br. Ch. Cases* 158; 2 *Br. P. C.* 415; 1 *Cox* 428; 8 *Ves.* 517; 9 *Id.* 246; 10 *Id.* 470. These were cases of *executory contract.* In the case in 9 *Ves.* 246, Lord Eldon says, unless the inadequacy of price is such as shocks the conscience, and amounts in itself to conclusive and decisive evidence of fraud in the transaction, it is not itself sufficient ground for refusing a specific performance. Also cited Moth *v.* Atwood, 5 *Ves.* 845; 2 *Ham.* 502; 3 *Cowen* 591–608; 7 *Ves.* 35; 6 *John. Ch. Rep.* 222–232; 3 *Ves. & Bea.* 187; 8 *Ves.* 137; 10 *Id.* 473.

In 10 *Ves.* 95 and 108, it is said that inadequacy of consideration, though not of itself a sufficient ground for setting aside a contract, is, when gross, strong evidence of fraud. It is thus only *evidence of fraud* which may be repelled, as was done in this case. Reference was also made to 13 *Ves.* 95; 1 *Yeates* 583; 1 *Story's Eq.* 245–6–9.

As to the charge in answer to the *third* point, viz. that in dealing with young heirs for their reversionary interests, the conveyance may be set aside for inadequacy of price, it was said that Aaron Norris was not *an heir expectant.* To a moiety of the land he had a right to *immediate possession;* to the other moiety upon the death of Harper, the second husband of his grandmother, from whom, however, he derived no interest in the land. It was said that in England the rule was founded in policy, in order to preserve the inheritance for the sole heir; but here the law divides inheritances among children. That in a number of the English cases there was deception or concealment practised; and that the doctrine there is not so general as charged by the Court in this case, reference was made to 1 *Atkyns* 346, 354. Also cited 8 *Mass.* 111; 8 *Pick.* 479, 482. It was further said that though the difference between the price agreed on and the value of the property was great, still the circumstances of this case repelled the idea

[Davidson *v.* Little.]

of *fraud* in the grantee; that the testimony showed the plaintiff's conduct to be fair; that the vendor was anxious to sell; and the reasons he assigned for selling—that his father's legitimacy was questioned—great lapse of time had occurred.

*Ewing* and *Patterson*, for defendants in error.—Fanny Little first married David Norris, by whom she had two children, David and Malinda. On the death of David Norris she married John Harper, who yet survives, and by whom she left six children. David Norris, her eldest son, died, leaving six children, of whom Aaron Norris was the eldest. It was said that Aaron Norris, supposing that *he* was entitled to *but one-eighth part of the land,* procured a power of attorney from his brother and sisters to sell their interest in the land in question, called the Harper tract. It was said that he sold to the plaintiff his own interest, and by virtue of the power of attorney he sold the interest of his brother and sisters in the whole tract. The consideration was to be $350; for $150 of which a bond was to be given, to be paid when the brother and sisters would convey to him. He paid $200; and the brother and sisters refusing to convey, the bond for $150 was given up, and $200 was thus the amount paid for the land, which was estimated at about $8000. As Aaron Norris was sole heir in tail to the whole tract, and so known before the conveyance to the plaintiff, it was said, that it was contended on the trial, in the first place, that there was *actual fraud,* on the part of the plaintiff, in taking advantage of the weakness or ignorance of Aaron Norris, and that therefore he could not recover. *In the second* place, it was contended that if the jury were not satisfied that there was *actual fraud,* the inadequacy of price was so gross as to be such evidence of presumptive fraud as to vitiate the sale; particularly as the agreement was made with a young heir, and in relation to land, half of which was in expectancy.

It was contended that the charge in answer to the *second point,* "that gross inadequacy of price, such as would shock the judgment of every man of common sense, is presumptive evidence of fraud," was correct, and reference was made to the following authorities, decided from 1682 till 1778, viz.: Nott *v.* Hill, 2 *Cases in Chan.* 120; 1 *Vern.* 167; *Id.* 237; 2 *Id.* 14; *Id.* 27; *Id.* 121; 2 *Freeman* 111; 1 *P. Wms.* 239; *Id.* 310; 2 *Ves. sen.* 125; *Id.* 281; 1 *Atk.* 301; 1 *Wills* 320; 1 *Bro. C. R.* 1; to the following, decided since 1804, viz.: 10 *Ves.* 209, affirmed in 14 *Ves.* 28; 6 *Ves.* 266; 3 *Ves. & B.* 119; 1 *Atk.* 351; 16 *Id.* 517; also, 2 *Kent* 477; 4 *De Saussure* 651; 2 *Binney* 129–135; 8 *Watts* 374–8; 8 *Ser. & R.* 294; 3 *Cowen* 516–526.

As to the answer to the *third* point, as to contracts with young or expectant heirs, reference was made to 1 *Bro. C. R.* 1; 17 *Ves.*

[Davidson v. Little.]

20; 16 *Ves.* 514; 2 *Johns. Ch.* 25; 12 *Ves.* 371–2. It was said, though mere inadequacy is not sufficient to set aside an executed contract, yet that where the inadequacy of price was so gross as to shock the conscience, the contract should be rescinded.

The opinion of the Court was delivered by

BLACK, C. J.—One Aaron Norris inherited the land in dispute, which was worth about eight thousand dollars, and sold it when he was twenty-three years of age, to Davidson, for three hundred and fifty dollars. At the time of the sale, another person had a life estate in part of the land. There also appears to have been some doubt about a material fact on which the title of Norris rested.

The judge who tried the cause instructed the jury, 1. That the conveyance was void if the price paid by the vendee was *shockingly* inadequate, though the transaction should be found free from all actual fraud; and, 2. That inequality between the price and the value of land sold is alone sufficient to set aside a contract made with a young heir, whose interest is reversionary.

An unexecuted contract will not be enforced in a court of equity, if it seems to be unconscionable. But after it has been once executed by the parties themselves, a chancellor will not interfere by declaring it void for that reason alone. There are many cases, therefore, of contracts for the sale of lands, in which the vendee would have no chance of a decree for specific performance, but in which the vendor puts himself beyond the reach of relief by making the legal conveyance.

A party who complains that he has been wronged, and brings a bill on such grounds, must make out a clear case before he can expect a decree to cancel his own deed. If, however, he repents before the execution of the contract and stands upon the defensive, he may have all the advantage of his adversary's weakness as well as his own strength. But whether the vendor comes into court as defendant or as plaintiff, before the conveyance or afterwards, a gross inadequacy of price is some evidence of fraud; and, if fraud is satisfactorily proved, it makes a deed void as readily as articles of agreement. An unexecuted contract has been often annulled, or the vendee left to his action at law, when there was no proof of foul practice, except inequality between the price agreed on and the thing sold. But inadequacy alone must be rejected as insufficient to justify the cancellation of a conveyance, except in the case of an heir expectant, who anticipates his inheritance by selling it before he gets it.

In the case at bar, the judge put the case to the jury on the naked fact, that the consideration of the conveyance was so grossly inadequate as to shock the judgment and produce surprise;

[Davidson *v.* Little.]

and charged that if this should be found, it would of itself amount to presumptive or legal fraud, although there was no actual fraud in the transaction.    We are all of opinion that this was a mistake.    Inadequacy of price is not fraud.    A man may be as honest in making a profitable bargain as a bad one; and the law does not require him to pay a full price, if the person he deals with is willing to take less.    The owner of property may sell it for very little, or give it away for nothing, if he thinks fit; and however unreasonable his conduct may seem, his will alone is sufficient to avouch the  act—" *Stat pro ratione voluntas.*"

Such gross inadequacy as there was in this case is very well calculated to fix upon the transaction a serious suspicion of its fairness.    It is contrary to all our usual experience that a man should part with his property at five per cent. of its value, unless he was excessively weak or ignorant, or under the influence of some deception.    But if the vendor was thoroughly acquainted with every fact which it was necessary for him to know; if he was twenty-one years of age, and of sound mind; if there were no circumstances which gave the vendee an improper control over him, amounting to mental imprisonment; if, in short, the vendee behaved honestly, and the vendor was able to act like a free man, with his eyes open, then the one had a right to sell, and the other to buy, on any terms they saw proper to agree upon.    The law will never interfere, between the parties themselves, to set aside an honest contract which they have voluntarily made.    When creditors complain, the case is totally different.    The sale of lands or goods by an indebted person for less than their value is *ipso facto* a fraud in both vendor and vendee.

The Court should have charged the jury that, if there was no actual fraud committed by the vendee, the conveyance could not be disturbed; that the inadequacy of the price, gross as it was, could be regarded only as evidence of fraud; that this being the case of an executed contract, the inadequacy is not sufficient to prove the fraud without some additional evidence; that all the facts connected with the transaction must be considered together; and if by this means it should appear to be honest, the verdict ought to be for the vendee.

This case does not seem to be within the rule which sets aside an executed contract with an heir, for mere inadequacy of price. Norris was not an heir expectant.    The estate was fully vested in him.    The fact that another had a life estate in one-half of it, makes no difference, or at most is a very slight circumstance.

If the Court had been right in the general rules laid down, those rules would not have applied to a case like this.    Not only are there no creditors complaining of this sale as an injury to them, but, for aught that appears, Norris himself is perfectly satisfied

[Davidson *v.* Little.]

with it.   There is no evidence on record that he ever objected to it, or authorized anybody else to do so.   The defendants are in possession without any title at all, and when Norris's vendee brought ejectment to turn them out, they had no right to set up, as their defence, the fact that Norris conveyed it without sufficient consideration.  No matter how fraudulent that conveyance may have been, the cheated party alone, or some one claiming under him, can take advantage of its invalidity.

Judgment reversed and *venire facias de novo* awarded.