# Whelen, Appellant, *v.* Phillips.

*Assignment of contingent interest.*

In Pennsylvania a person sui juris owning a contingent interest in land or in personal property, may sell the same, to one who does not stand towards him in a trust relation, and who does not impose upon him, for any sum agreed upon between them.

A legatee under a will was entitled to a legacy of $4,466.66, contingent upon his surviving his mother. During the lifetime of his mother who was then seventy-six years of age, the legatee being in financial straits, sold his interest in the legacy for $1,000 to a person who stood in no trust relation to him: *Held*, that, in the absence of evidence of oppression or bad faith in the transaction, the sale passed a good title to the purchaser.

Argued, April 1, 1892. Appeal, No. 169, Jan. T., 1892, by plaintiff, William N. Whelen, from judgment of C. P. No. 4 (Old District Court), Sept. T., 1869, No. 516, on verdict for plaintiff for part of his claim. Before STERRETT, GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Judgment was entered on Nov. 9, 1869, against Charles L. Phillips. On Jan. 13, 1891, an attachment sur judgment was issued against the Pennsylvania Company for Insurance on Lives and Granting Annuities, executor of Henry M. Phillips.

The facts appear by the opinion of the Supreme Court.

At the trial, before WILLSON, J., counsel for assignee offered in evidence an assignment from Charles L. Phillips to John M. Doyle of the contingent legacy in controversy, and also an as-

signment of the same from John M. Doyle to William E. Dobbins.

Plaintiff objected to the offer, (1) upon the ground that the interest sought to be assigned in the first paper is a remote or contingent interest, and therefore the assignment is not good; (2) that at the time of the assignment there was no present interest in the assignor, and that before the assignment of such a remote contingency can be admitted in evidence the assignee must show that the transaction is fair and the price adequate.

The Court: I shall not exclude the papers upon the ground that this was a remote and contingent interest. Upon the other point as to whether or not it is the duty of the assignee to proceed further and show the bona fides of the transaction is not a subject arising upon the papers. Exception. [1–4]

The court admitted in evidence under objection and exception, conversations between Edward J. Records and defendant Phillips upon the nature of the assignment from Doyle to Dobbins. [5, 6]

The court charged in part as follows :

["I have no doubt at all that the interest which Mr. Phillips had under his uncle's will was an interest which in Pennsylvania was assignable or transferable, and that he could make a valid assignment of it for a valuable consideration to a third party, and the question arises whether he did make such an assignment.] [8]

"Now, while an assignment of that kind can be made, it is true, it is capable of being attacked, perhaps somewhat more readily than an assignment of an ordinary character. A man who is dealing with reference to a future expectant interest, an interest which is not vested in him, which is not entirely within his control, which he cannot presently enjoy, as was the case here with the legatee in question, is, when he comes to deal with one who proposes to buy it, in a different position from that of a man who has a claim, a note or a judgment which he wishes to sell. What he proposes to sell and the other to buy in a genuine bona fide transaction is something which is necessarily certain in its value.

"Take this particular case. The legacy which Mr. Phillips was entitled to under the will of his uncle was one which would not vest in him or become his absolutely until his mother

died.  His mother was living at the time of this so-called
assignment.  If he died before she did then nothing would
pass to the assignee.  For instance, Mr. Doyle says he pur-
chased all the right that Mr. Phillips had in the legacy of
$4,600 or thereabouts.  Of course, when he purchased it, if he
did so in a proper way, he purchased something which might
realize for him a certain sum of money, the $4,600, or, in case
Mr. Phillips died before his mother, nothing.  [According to
his statement, he paid $1,000 for something or nothing, as it
might turn out, paid it for the right, whatever it was, and that
right might be valuable or might be valueless, according as
the event turned out.] [9]

"Did he in that transaction act honestly and fairly towards
Mr. Phillips?  If he did, that is an end to the plaintiff's claim
here to that portion of the fund in the hands of the garnishee
which the assignment called for, and you are not to settle that
merely by considering whether Mr. Phillips was embarrassed.
He might be embarrassed, and yet the transaction be a perfectly
good one.  Otherwise a man in his position could not part with
his property; [the simple fact that he (Phillips) was embar-
rassed would not vitiate the transaction.  The question upon
that point is, did Mr. Doyle (who was undoubtedly an assignee
by the paper shown here, which is admitted to have been exe-
cuted), take advantage of his position to put the screws upon
Phillips to get from him an assignment for a less sum of money
than otherwise Mr. Phillips could have obtained?] [10]  Is
there or not any evidence which would justify that conclusion
upon your part?

"Mr. Phillips, as I understand his testimony, does not say
that.  He takes the position that it was a pledge which Mr.
Doyle acquired and not an absolute title; that it was an ad-
vance of money rather than a purchase by Doyle.  If that were
the transaction, and if it were a transaction which would affect
the present holder of the property assigned, whatever it may
be, then undoubtedly the plaintiff here would be entitled to a
verdict for the entire sum, less the amount advanced with in-
terest.  [But, Mr. Doyle says it was not an advance, that it
was an out and out purchase, and Mr. Records has testified
that in the final transaction which vested title in Mr. Dobbins,
the present claimant, Mr. Phillips took part and stated that

he had no interest in it.] [11]   If you believe Mr. Doyle and Mr. Records you will hardly be of the opinion that it was an advance, but that it was treated and understood between the two parties as an actual sale of the interest.

" We now come back to that same question.   If you think it was a sale and not a pledge you have to consider the point which I have already called to your attention; was it a fair transaction as between Doyle and Phillips?   The fact that Doyle may have taken excessive rates of interest for money in other transactions ought not necessarily to prejudice his case in this transaction.   He was buying, as I have already said to you, an altogether uncertain thing, something which might or might not prove valuable to him; he might lose his thousand dollars entirely, he might get $4,600 odd.   That question I shall leave to you in connection with what I shall say in a moment.   If it was a fair transaction, although it may turn out to be largely to the advantage of Dobbins as Doyle's assignee, then you have nothing to do with the question of whether it may prove profitable.

[" The question still remains that even if Doyle did acquire whatever title he had by assignment under circumstances which would avoid it as between him and Phillips—still the present holder of the property assigned, whatever it may be—Mr. Dobbins may have a better right than Doyle could have had, if you believe that the evidence justifies you in saying that Phillips was an actual party to the transfer to Dobbins.   If he dealt in that matter with Mr. Dobbins or his agent or representative in such a way as to justify the impression that he had no interest in the matter, that Doyle was the owner of the legacy so far as he could give it to him by assignment, if you believe what has been said in regard to Phillips's consenting to the obtaining of a new policy upon his life for the consideration of a hundred dollars, for the purpose of perfecting in Mr. Dobbins the title he was getting and of securing to him whatever money he might put at risk by the purchase of that interest from Doyle, if you believe those circumstances to be true and that Phillips contributed to make a sale of this property (which he claims to have been only a pledge to Doyle) to Dobbins, then he must be regarded as estopped, and as the plain-

tiff here can only claim through him, the plaintiff can set up no better title than he could under these circumstances.] " [12]

Plaintiff presented the following point:

" 3. Under the evidence in no event can the assignee recover more than the amount paid by Doyle to Phillips with interest." Refused. [7]

Verdict and judgment for plaintiff for $2,400.

Plaintiff appealed.

*Errors assigned* were (1–6) rulings on evidence, but not quoting bills of exceptions or evidence; (7–12) instructions, quoting point and charge as above.

*Charles Henry Hart, F. Carroll Brewster* with him, for appellant, cited Earl of Chesterfield v. Sir Abraham Janssen, 2 Ves. Sr. 125 (1750) ; 1 White and Tudor's L. C. Eq. 773–836 ; Earl of Aylesford v. Morris, L. R. 8 Ch. Ap. 484–490 ; Gowland v. De Faria, 17 Ves. Jr. 20 ; Bawtree v. Watson, 3 M. & K. 339 ; Shelly v. Nash, 3 Madd. 232 ; Foster v. Roberts, 29 Beav. 467 (1861) ; Beynon v. Cook, L. R. 10 Ch. Ap. 389 ; Salter v. Bradshaw, 26 Beav. 161 (1858) ; Butler v. Duncan, 47 Mich. 94 ; King v. Hamlet, 2 M. & K. 456–475 (1834) ; Tottenham v. Emmet, 14 W. R. 3 (1865) ; Talbot v. Staniforth, 1 J. & H. 484 ; Boothby v. Boothby, 1 Mac. & G. 604 ; Davidson v. Little, 22 Pa. 251 (1853) ; Curwyn v. Milner, 3 P. Wms. 292 ; Gowland v. DeFaria, 17 Ves. Jr. 23 ; Boynton v. Hubbard, 7 Mass. 112 ; Miller v. Cook, L. R. 10 Eq. Cases, 641–646 ; Curtin v. Somerset, 140 Pa. 70–81 (1891) ; Power's Ap., 63 Pa. 443 (1869) ; Tweddell v. Tweddell, T. & R. 13 ; Sullivan v. Sullivan, 21 Law Rep. 531 ; Taylor v. Taylor, 8 Howard, 183 ; East Lewisburg Manufacturing Co. v. Marsh, 91 Pa. 96 (1879) ; Ruple v. Bindley, 91 Pa. 296 (1879) ; Bittenbender v. R. R. Co., 40 Pa. 269 ; Bogle's Est., 9 W. N. 256 (1880) ; Lardner's Est., 16 W. N. 51 (1885) ; Patterson v. Caldwell, 124 Pa. 461 (1889) ; Mulhall v. Quinn, 1 Gray, 105 ; Low v. Pew, 108 Mass. 347 (1869) ; Huling v. Cabell, 9 W. Va. 522 (1876) ; Hartley v. Tapley, 2 Gray, 565 ; Addis v. Campbell, 4 Beav. 401 (1841) ; Nesbitt v. Berridge, 32 Beav. 282 (1863) ; Reineman v. Robb, 98 Pa. 474 (1881) ; Theyken v. Howe Co., 109 Pa. 95 (1885) ; Griffiths v. Sears, 112 Pa. 523 (1886) ; Duquesne Bank's Ap., 74 Pa. 426 ; Earn-

est v. Hoskins, 100 Pa. 551 (1882); Duncan v. McCullough, 4 S. & R. 485 (1818); Negley v. Lindsay, 67 Pa. 217 (1870); East Lewisburg v. Marsh, 91 Pa. 96; White and Tudor, L. C. Eq. 609, 824; Twisleton v. Griffith, 1 P. Wms. 310; Fox v. Wright, 6 Madd. 111; Miller v. Cook, 10 L. R. Eq. 641–47 (1870); Jenkins v. Pye, 12 Peters, 241–257 (1838); Marr v. Marr, 110 Pa. 60 (1885); Strohen v. Sav. Fund, 115 Pa. 273 (1886); Davidson v. Little, 22 Pa. 252; Rhoads v. Blatt, 84 Pa. 31 (1887).

*John G. Johnson, Elias P. Smithers* with him, for appellee, cited, Gowland v. DeFaria, 17 Ves. 20; Field v. Mayor of New York, 2 Selden, 179; St. Albyn v. Harding, 27 Beav. 11; Salter v. Bradshaw, 26 Beav. 161; Nesbitt v. Barridge, 32 Beav. 282; Jones v. Ricketts, 31 Beav. 130; Aylesford v. Morris, 8 Ch. 489–492; Webster v. Cook, 2 Ch. Ap. 544; Bromley v. Smith, 26 Beav. 665; Beynon v. Cook, L. R. 10 Ch. Ap. 391; O'Rorke v. Bolingbroke, 2 Ap. Cas. 814; Davidson v. Little, 22 Pa. 245; Bogle's Est., 9 W. N. 256; Lardner's Est., 16 W. N. 51; Power's Ap., 63 Pa. 443; 2 Williams on Executors, 6th ed., 1378; Hobson v. Trevor, 2 Peere Williams, 191; Beckley v. Newland, 2 P. Wms. 182; Holroyd v. Marshall, 10 H. of L. C. 191; Sullings v. Richmond, 5 Allen, 187; Tarbell v. Tarbell, 10 Allen, 278; Miller's Ap. 340; Manufacturing Co. v. Marsh, 91 Pa. 96; Ruple v. Bindley, 91 Pa. 296; Field v. City of New York, 6 N. Y. 187; Patterson v. Caldwell, 124 Pa. 461; Power's Ap., 63 Pa. 443; East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 96.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

In January, 1891, plaintiff obtained judgment against Charles L. Phillips for $7,680.92, on which he issued an attachment execution and summoned the Pennsylvania Company for Insurance on Lives and Granting Annuities, executor of Henry M. Phillips, deceased, as garnishee. In its answer to interrogatories, said garnishee admitted having in its hands two funds, due Charles L. Phillips, defendant in said judgment, together amounting to $7,066.66, but alleged that it had been duly notified of the assignment by said Charles of one of said funds, viz.: $4,666.66, to John M. Doyle and also of the subsequent assignment of the same by said Doyle to W. E. Dobbins.

The funds, thus admitted by the garnishee to be in its hands, accrued under provisions in the will of Henry M. Phillips, deceased, by which the said Charles L. Phillips, nephew of said testator, upon surviving his mother, became entitled to a legacy of $4,666.66, and also to $2,400, his distributive share of a legacy, to his sister, contingent upon her surviving her mother, which she did not do.

It was alleged by plaintiff that, in September, 1884, in the lifetime of Charles L. Phillips' mother (then 76 years of age), when he was in financial straits and had only an expectancy in said contingent legacy of $4,666.66, he, the said Charles, assigned the same for the consideration of $1,000 to said Doyle, who in 1888, assigned the same to said Dobbins.

The following is the clause of Henry M. Phillips' will under which his nephew, Charles L. Phillips, upon the decease of his mother, Frances Phillips, became entitled to said legacy, etc.: " To her sons, Henry, Edwin and Charles L. and the issue of any of them that may be deceased, then [at death of Mrs. Phillips] living, each the sum of $4,666.66, such issue of deceased daughters or sons taking, however, only the sum that would have been payable to their parents if living; and, in the event of the death of any of said children in their mother's lifetime, leaving no issue living at the time of her decease, the sum that would be payable to said child if living, I direct to be divided among all the surviving children and issue as aforesaid."

The company garnishee pleaded nulla bona, and being a mere stakeholder, it notified said Dobbins to come in and defend his title to said legacy under the assignment aforesaid to Doyle and by Doyle to himself. The contest, therefore, was substantially between the plaintiff, Whelen, as attaching creditor, and Dobbins, as assignee of Doyle who was the assignee of the legatee Charles L. Phillips.

The controlling question was, whether the assignment of the $4,666.66, legacy, by Charles L. Phillips, in the lifetime of his mother, to Doyle for $1,000, etc., was valid and entitled Dobbins to demand and receive the fund when it became due and payable after the decease of Mrs. Phillips.

Plaintiff's contention was that the transaction between Doyle and Charles L. Phillips was one of those obnoxious " dealings

with an expectant heir for the purchase of his expectancy," which are sometimes characterized, particularly in England, as " catching bargains," and therefore void as against plaintiff's subsequent attachment execution.

The learned trial judge does not appear to have adopted the plaintiff's view of the law.   He overruled objections to the assignments from Phillips to Doyle and from Doyle to Dobbins and admitted the papers in evidence, holding that " whether or not, it is the duty of the assignee to proceed and show the bona fides of the transaction, is not a subject arising upon the papers."   In charging the jury he said, among other things : " I have no doubt at all that the interest which Mr. Phillips had under his uncle's will, was an interest which in Pennsylvania was assignable or transferable, and he could make a valid assignment of it for a valuable consideration to a third party, and the question arises whether he did make such assignment. . . ."

" The legacy which Mr. Phillips was entitled to under the will of his uncle was one which would not vest in him or become his absolutely until his mother died. . . . If he died before she did, nothing would pass to the assignee.   For instance, Mr. Doyle says, he purchased all the right that Mr. Phillips had in the legacy. . . . Of course, when he purchased it, if he did so in a proper way, he purchased something which might realize for him a certain sum of money, . . . . or, in case Mr. Phillips died before his mother, nothing.   According to his statement he paid $1,000 for something or nothing, as it might turn out—paid it for the right, whatever it was, and that right might be valuable or valueless, according as the event turned out."

" Did he in that transaction act honestly and fairly towards Mr. Phillips ?   If he did, that is the end of the plaintiff's claim here to that portion of the fund, in the hands of the garnishee, which the assignment calls for, and you are not to settle that merely by considering whether Mr. Phillips was embarrassed. He might be embarrassed and yet the transaction be a perfectly good one.   Otherwise, a man in his position could not part with his property.   The simple fact that he, Phillips, was embarrassed would not vitiate the transaction.   The question on that point is, did Mr. Doyle (who was undoubtedly an assignee

by the paper shown here, which is admitted to have been exe-cuted), take advantage of his position to put the screws upon Phillips to get from him an assignment for a less sum of money than otherwise Mr. Phillips could have obtained ?"

He further instructed the jury that if the assignment to Doyle originally was made under circumstances of good faith and not of oppression—that the consideration paid under the circumstances, taking the chances and uncertainties into view, was a fair and proper one, their verdict for the plaintiff would be the difference between $7,066.66 and $4,666.66 ; but if they found the transfer was not such a bona fide, honest transaction, and that Dobbins did not acquire a better right than Doyle had, their verdict should be for the amount of the fund $7,066.66, less the amount actually advanced to Phillips.

In affirming plaintiff's first point for charge, the learned judge further said: " It is undoubtedly true that an assign-ment of a remote and contingent interest is void at law and can only be sustained in equity. If it appears that the assignee has taken any unfair advantage of, or has oppressed the assignor in the transaction, or I may go further and say that if it does not appear that that is not the nature of the transaction, then, as between the original parties, the assignor and the assignee, the transaction would be a void one. But, as I have already said to you, it is possible, under the testimony in this case to which I have already referred, that the present claimant, Dob-bins, might have a superior title to that which Doyle would have had."

An examination of the evidence, in connection with the charge and rulings of the court, has convinced us that the lat-ter were quite as favorable to the plaintiff as he had any just reason to expect. There was no error in either of the rulings complained of in the first four specifications. The proper exe-cution of the assignments, by Phillips to Doyle and by the latter to Dobbins, were not questioned. Both papers were self-explanatory, and, being for the construction of the court, they were rightly admitted in evidence. The learned judge was also clearly right in holding that the question raised by the plain-tiff, as to the alleged duty of the assignee " to proceed further and show the bona fides of the transaction is not a subject aris-ing upon the papers " then offered in evidence.

Nor, do we think there was any error in admitting the evidence referred to in the 5th and 6th specifications; or in not affirming plaintiff's third point for charge, recited in the 7th specification, and thus refusing to instruct the jury " that under the evidence the assignee of the legacy cannot, in any event, recover more than was paid to Phillips by Doyle, with interest." In view of the testimony, such instruction would have been erroneous. The evidence, referred to in the 5th and 6th specifications, tended to show that the assignment by Doyle to Dobbins was made with the knowledge and approbation of Phillips, who in the transaction received a substantial consideration. Referring to a time immediately antecedent to the sale by Doyle, the witness, Edward J. Records, testified that, in the course of the conversation with Phillips, the latter " said he had no interest in this matter (meaning the sale and transfer of the legacy by Doyle); he had sold it, and consequently he would not take any trouble to be reinsured, unless he was paid, and so I agreed to give him a hundred dollars if he did, and that is all there is about it."

The subjects of complaint, in the remaining five specifications, 8th to 12th inclusive, are portions of the charge recited therein, respectively, some of which are embraced in the foregoing quotations.

Considered as a whole, in connection with the evidence, we are satisfied that the charge is a clear, adequate and substantially correct presentation of the case. There appears to be nothing in either of the excerpts, complained of, that would justify a reversal of the judgment.

The questions of fact, upon which the validity of the assignment and consequent right of Dobbins to the legacy hinged, were fairly submitted to the jury; and their verdict, which is practically in his favor, by necessary implication establishes the fact that the transaction, which resulted in the assignment of said legacy, was a bona fide purchase, for a consideration which, in the circumstances, was fair and proper, and that it was unaccompanied by any acts of bad faith, oppression or fraud of any kind, on the part of the assignee. None of our authorities require anything more than this. It follows that Mr. Dobbins was justly and equitably entitled to the amount of the legacy before plaintiff's attachment execution was issued.

In England, the words " expectant heir " originally meant just what the expression naturally signifies,—an heir expecting an inheritance through intestacy or devise.    The doctrine of " expectant heir " amounted to nothing more than this, that a person could not, at common law, sell that which did not belong to him, either in possession or by vested right, but which he hoped might be acquired either certainly or contingently in the future.    As thus understood, the doctrine was similar to that recognized in this state, viz. : that, at common law, a man may not sell or assign that in which he has no interest, and which therefore does not and may not exist; but, in England, as here, in equity a person may be compelled to make good or to treat as valid an assignment of a mere expectancy, of a mere possibility, of something which does not actually exist.    As the result of judicial sympathy with the nobility in England the doctrine from time to time expanded until it became so inconsistent with justice as to call for the interposition of parliament; Pollock's Prin. Contract, 549, 556 ; 2 Leading Cases in Eq. (4th Am. ed.) 1607 et seq. But, without inquiring as to the present status of the law elsewhere, it may be confidently asserted that in this state a person, sui juris, owning a contingent remainder in land, or in personal property, may sell the same for such sum as may be agreed upon between himself and the purchaser, provided the former does not stand towards him in a trust relation, and, in making the purchase, acts in good faith.

The general subject has been considered by this court in Davidson v. Little, 22 Pa. 245; Power's Appeal, 63 Pa. 443 ; Manufacturing Co. v. Marsh, 91 Pa. 96 ; Ruple v. Bindley, 91 Pa. 296 ; Patterson v. Caldwell, 124 Pa. 455, 461, and other cases.

In Davidson v. Little, supra, Mr. Chief Justice BLACK, delivering the opinion of this court, reversing the court below, said : " The court should have charged the jury that if there was no actual fraud committed by the vendee, the conveyance could not be disturbed ; that the inadequacy of price, gross as it was, could be regarded only as evidence of fraud ; . . . . that all the facts connected with the transaction must be considered together ; and, if, by this means, it should appear to be honest, the verdict ought to be for the vendee."    This,

however, was not strictly a purchase from an expectant heir. The property was vested in the vendor subject to the life estate of another person in an undivided moiety.

In Ruple v. Bindley, supra, it is said: "An assignment, for a valuable consideration, of demands having at the time no actual existence, but which rest in expectancy only, is valid in equity as an agreement, and takes effect as an assignment when the demands, intended to be assigned, are subsequently brought into existence."

The instructions of the court below appear to be in harmony with the principles recognized in our cases.

Judgment affirmed.