# HAYES *v.* HUDDLESON.

VENDOR AND PURCHASER; DEEDS; REMAINDERS; RESCISSION; INADEQUACY OF CONSIDERATION; PLEADING; AMENDMENT.

1. The English rule that a sale of a vested interest in property, whether in reversion or remainder, will be vacated for inadequacy of consideration alone, will not be followed in this jurisdiction.

2. Inadequacy of consideration, in the absence of fraud or imposition, is insufficient to warrant the rescission of a conveyance of her interest by the daughter of the devisee of a vested remainder which was subject to a life estate not yet ended, where by the terms of the will the daughter would have succeeded to the remainder upon the death of the parent before the remainder came into possession, and the parent had by deed conveyed to the daughter, subject to a life estate in herself.

3. There is nothing in the relations of the parties, which, coupled with inadequacy of consideration, will warrant the avoidance of a conveyance by a woman of mature age, familiar with the property, for the purpose of raising money in an emergency to protect her interests in other property, to one who bore her no express fiduciary relation, but whom she regarded as a friend and kinsman, accepting his advice and assistance generally in her transactions, where there is nothing to indicate fraud or undue influence, and a period of two years elapsed between the conveyance and the filing of the bill for rescission, and the plaintiff does not profess to have knowledge not possessed by her at the time of the transaction or obtainable immediately thereafter. (Citing *Murray* v. *Hilton,* 8 App. D. C. 281, and *Holtzman* v. *Linton,* 27 App. D. C. 241.)

On rehearing.

4. The plaintiff in a suit to rescind a conveyance upon the ground of inadequacy of consideration and fiduciary relations of the grantee, having had an opportunity in the lower court to amend by showing an agreement to reconvey in two years, cannot, upon rehearing after a decision on appeal adverse to her, be permitted to make the amendment,—especially where the contractual period of reconveyance has elapsed without demand therefor.

No. 2460.  Submitted January 9, 1913.  Decided April 7, 1913.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing her bill filed for the rescission of a conveyance of property.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellant, Louise R. Hayes, as plaintiff, filed this bill on December 7, 1910, against Harry P. Huddleson and his wife, Saidee R. Huddleson, and Thomas W. Hay, Harry E. Hay, Edward W. Donn, and Oliver D. Darrell, trustees, defendants, and has appealed from a decree dismissing the same June 14, 1912.

The bill alleges that Columbus Alexander died in the District of Columbia in the year 1899, leaving real estate therein, including lot 12 in square 252 in the city of Washington. He left a will, which was duly probated as a will of personal and real property on March 7, 1900. That the lot above described, with other real estate, was devised to wife of testator, Rebecca Alexander, for her natural life, provided she remained a widow, and after her death or remarriage, to Walter O. Alexander (since deceased) and Thomas W. Hay, or the survivor of them, their, or his heirs and assigns, in trust for the use of testator's son Columbus S. Alexander, for and during his life, upon certain conditions, directing said trustees after the death of his said wife to pay the net income of said property to Columbus S. Alexander, Augusta Alexander, Eliza Ann Alexander, and Catherine Francelia Russell, and further provided that after the death of Columbus S. Alexander said trustees should sell said property and divide the proceeds equally between said Augusta Alexander, Eliza Ann Alexander, and Catherine Francelia Russell, the children of anyone thereof who may then be deceased to take the parent's share.

That Rebecca Alexander is alive, aged about ninety-one years, and had never remarried. Columbus S. Alexander died intestate in 1899. W. O. Alexander, trustee, is dead, and the trust is vested in Thomas W. Hay, surviving trustee.

Plaintiff and her sisters, Eva R. Bouic, and Katherine R. Weisiger, are the only children of Catherine Francelia Russell, who died in the year 1910. Said Catherine Francelia Russell on November 15, 1905, conveyed her one-third interest in said devised property to plaintiff and her said sisters, with a condition that the same should not be encumbered or alienated without the written consent of all the grantees. There was another condition, that she should during her life receive the income from said property so conveyed. Defendant Saidee Huddleson is the wife of Harry P. Huddleson and the daughter of the trustee Thomas W. Hay. Said Harry P. Huddleson graduated at a law school, and was admitted to the Bar of the District of Columbia; he is connected by marriage with plaintiff and her sisters, and has for ten years acted as attorney and adviser for them and their mother upon all matters connected with said interests. Prior to November 15, 1906, Catherine F. Russell was threatened with a damage suit, and upon the advice of said Huddleson conveyed the property as aforesaid. In April, 1908, plaintiff was in necessitous condition, threatened with the loss of all her property unless she could raise the sum of $3,000, which amount was needed to pay off an encumbrance upon certain property that she owned in Florida. She was in desperate circumstances, and appealed to said Huddleson for advice and for a loan, and was informed by him that he could not help her, that she could not borrow money on the lot of aforedescribed, and could not sell the same, for no one would buy because of the conditions of restraint in the deed aforesaid. She consulted other attorneys, and was advised that she could not obtain a loan on said property. She was practically desperate, whereupon said Huddleson told her that no one other than himself would buy said property or lend money thereon, but he would buy the property outright. He represented that her interest was worth comparatively little in the condition of affairs, and plaintiff, believing him, agreed to sell her interest to him for $10,000, and said Huddleson purchased the same, taking the title thereto in the name of his wife, May 28, 1908. Said Huddleson borrowed $2,500 from

Thomas W. Hay to complete said purchase, and the said property was conveyed in trust to Harry E. Hay and Edward W. Donn to secure the said loan. And a further deed of trust to secure a loan by Rose B. Darrell was made to Oliver W. Darrell and Thomas W. Hay, trustees. That at the time she conveyed said property plaintiff had no real idea of its value, and did not then know that as a whole it was worth at least $250,-000. Her interest was one ninth thereof, all of which was well known to defendant Huddleson, who was acting as her attorney, and upon whom she relied for advice. That her interest in said property at the time of said sale was worth at least $25,000. She offers to return the said sum of $10,000, with interest and costs, and prays a decree vacating her said deed and requiring a reconveyance by defendants free from encumbrances; that the aforesaid encumbrances be declared subordinate to plaintiff's title, and for general relief.

The answer of Harry P. Huddleson admitted the allegations of the bill relating to the will of Columbus Alexander, the shares of the parties thereunder, and the fact that plaintiff had a one-ninth interest therein subject to the life estates of her mother and grandmother. He admits that he graduated from a law school in the District of Columbia, but denies that he has been admitted to the bar. He denies that he has acted as attorney for the plaintiff or her mother in legal matters connected with the estate of Columbus Alexander. He admits that one time he procured a purchaser for a small lot at 16th and L streets, at the request of plaintiff and her sisters, and the same was sold at an advantageous price. He says that he knew nothing of the alleged threatened damage suit against Catherine F. Russell, except what was told him by the plaintiff; that the said conveyance was not advised by him, and his only connection therewith was to prepare the said conveyances at the request of plaintiff, subsequently making some corrections thereof by plaintiff's direction. Such service was rendered without charge, or benefit to himself. That the said conveyances vested the title of the said Catherine F. Russell in plaintiff and her sisters, subject to the life estate of Rebecca Alex-

ander, and upon condition that the property should neither be encumbered nor alienated without the written consent of each grantor. There was also a contemporaneous written agreement that the said Catherine F. Russell should be permitted to receive all the income therefrom during her life. He denies the allegation that plaintiff applied to him for a loan, or that he advised her she could not procure a loan from, or make a sale to, anyone but himself. He avers that in April, 1908, he heard that plaintiff was endeavoring either to borrow money upon or to sell her interest, and that she was in treaty with a dealer in speculative titles; whereupon, for protecting the interests of plaintiff and her sisters and mother, defendant, who had not been consulted in the matter, advised plaintiff strongly against selling her Washington property, telling her it would be better to sacrifice her Florida property; but telling her that if she should determine otherwise, and should fail in getting a loan on the Washington property, he might be able to handle the sale for her. That plaintiff suspected defendant was trying to purchase the property for her sisters, and upon being assured that her suspicions were unfounded, she, although stating that her interest was worth not less than $20,000, fixed $10,000 as the price at which she would sell. That "thereupon he told her that he could dispose of her interest for the price named by herself, $10,000, not at the time disclosing the fact that he himself contemplated making the purchase, because of his wish that, if he purchased it, both the price and the terms of sale should be determined by her as though dealing with a stranger." After being informed that she was determined to sell, and that the price and terms were satisfactory, he informed her that the offer came from him, but reminded her that, by the terms of the conveyance from her mother, alienation was prohibited except by consent of all the sisters, and that plaintiff's sisters, to whom he had explained the situation, were unwilling to consent. Thereupon plaintiff informed him that unless her sisters would consent to the sale to him she would sell to a stranger with whom she was in treaty. Following this the mother and sisters consented to sell to him; he paid the consideration

agreed upon, and she conveyed to defendant's wife, part of the purchase money being the latter's. He avers that plaintiff had knowledge of the value of her said interest, informing defendant, some weeks before the sale, that it was worth $20,000. This sum defendant believes to be an outside valuation of the property at the present time, irrespective of the outstanding life interest, and notwithstanding the fact that the property has materially enhanced in value since said conveyances.

*Mr. Wharton E. Lester* for the appellant.

*Messrs. Archer & Smith* and *Mr. J. J. Darlington* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first proposition on behalf of the appellant is: "The burden of proof is upon persons dealing with holders of expectant interests to show affirmatively that a full and valuable consideration was paid."

Upon whom is imposed the burden of proof in such cases is a matter of no importance in the present case. What the actual market value of plaintiff's interest was, at the time of her conveyance, is a matter of uncertainty. The elder life tenant was about ninety or ninety-one years of age at the time; but the other, whose age and state of health do not appear, was evidently not a very old woman. While the restraint upon alienation in the mother's conveyance to plaintiff and her sisters was doubtless inoperative, as matter of law, it would probably tend to deter purchasers, and therefore depreciate the market value. Without undertaking to determine the value of the interest from the evidence introduced, which is not definite in some important particulars, we are satisfied that it was worth considerably more than the $10,000 consideration paid. That the defendant thought it was worth more than $10,000 is apparent from his offer. That it was worth more at the time this

suit was begun, not only by reason of the death of the younger life tenant, but also by the enhancement of the value of real estate in the neighborhood, is also apparent.

The interest of the plaintiff at the time of conveyance was, however, more than a mere expectancy in the legal sense. The will of Columbus Alexander devised his entire estate to his widow for life.

The particular lot to which this controversy relates was devised to trustees, who, after the death of the life tenant, were directed to pay a portion of the net rents to a son, Columbus S. Alexander, during his life, and the remainder to three daughters, one of whom was the mother of plaintiff. After the death of Columbus S. Alexander the trustees were directed to sell the entire lot, and distribute the proceeds equally between the said three daughters, "the children of any one who may be deceased to take the parent's share." Columbus S. Alexander died before the plaintiff conveyed; the grandmother and mother were alive. The interest of plaintiff as one of the three children of her mother was contingent upon the death of her mother before the direction to sell and divide the proceeds could be carried out. Whatever interest she took, therefore, was under the will; it was not a mere hope or expectancy of succeeding to the estate by inheritance from her mother. At the time of her conveyance to the defendant, one third of the mother's vested remainder had passed to her by the mother's conveyance; the latter reserving the rents and income thereof to herself for life.

It is unnecessary to show that the law was settled, at an early day in England, that expectant heirs are entitled for mere inadequacy of price, to have contracts for sale rescinded upon terms of refunding the money actually received, with interest. Such contracts were regarded as a fraud upon the ancestor from whom was the expectation of the estate, who, being kept in ignorance of the transaction, was misled to leave his estate, not in fact to his heir, but to artful persons who had taken advantage of the improvidence and necessities of the expectant heir. The rule has been regarded as declaratory of sound pub-

lic policy, and as such has been upheld by many of the American courts. *Boynton* v. *Hubbard,* 7 Mass. 112; *M'Kinney* v. *Pinckard,* 2 Leigh. 149, 21 Am. Dec. 601; *Nimmo* v. *Davis,* 7 Tex. 26; *Parmelee* v. *Cameron,* 41 N. Y. 393; *Butler* v. *Duncan,* 47 Mich. 94, 41 Am. Rep. 711, 10 N. W. 123; *Bacon* v. *Bonham,* 33 N. J. Eq. 614; *McClure* v. *Raben,* 133 Ind. 507, 36 Am. St. Rep. 558, 33 N. E. 275.

As this was not a sale of a mere expectancy, the question to be determined is whether the same rule shall be applied in the case of a sale of a vested interest not in possession of the vendor. The earlier cases in England seem to hold that there is a substantial distinction between the two conditions; but the doctrine that the person entitled to such reversion or remainder is to be treated as an expectant heir, and his contracts of sale governed by the same rule was finally established, and remained in force until abolished by act of Parliament in 1868. 31 Vict. chap. 4. While the rule of the later English cases, that contracts of sale by a reversioner or remainderman will be vacated for mere inadequacy of consideration alone, has the support of eminent text writers and some judicial decisions in this country, it has not received the sanction of the Supreme Court of the United States. On the contrary, it may be regarded, inferentially, as having been denied. *Jenkins* v. *Pye,* 12 Pet. 241–252, 9 L. ed. 1070–1074. In that case a daughter had conveyed her remainder in an estate to her father, who was tenant for life. As in this case, the present value of the remainder was rendered uncertain by the existence of the life estate of the father, who was apparently in good health. Under the circumstances, it was said that the sum received "might be considered nearly, if not quite, an adequate consideration." It was found that no imposition had been practised, no undue influence exercised by the parent; and the conveyance was upheld. Mr. Justice Catron, who concurred with the majority of the court in dismissing the bill on account of laches, in a separate opinion in which the English cases are reviewed, maintained the doctrine which governed in the court below, that the daughter was "an heir of an estate in reversion, which descend-

ed to her in tender infancy, and in regard to the possession and enjoyment of which she must be deemed and treated, in a court of chancery, as an expectant heir." 12 Pet. p. 257.

Since that case (decided A. D. 1838), the question seems not to have arisen. The court of appeals of Virginia, in a well-considered case, in 1856, rejected the English rule as inapplicable. In a most able and learned opinion delivered by Allen, P., it was said: "Whatever principle may be adopted in reference to contracts with expectant heirs secretly selling the chance of a parent's or some relation's bounty; it seems to me that the actual adult owner of a vested interest in property, whether in reversion or remainder, should not be reduced to the condition of pupilage from regard to any supposed rule of public policy, or for the purpose of extending to him any particular protection. No such rule of public policy exists in this country; and all attempts to fetter the action of the owner by restricting his power of alienation operate injuriously to him. They lessen competition, and so depreciate the market price of his property. There is no valid reason for making this an exceptional case. The contracts of such reversioners or remaindermen, * * * if made by those competent to contract, if they are not gained by ill practice, nor made against the laws, should be kept." *Cribbens* v. *Markwood,* 13 Gratt. 495–507, 67 Am. Dec. 775. We are well satisfied with the reasoning of that opinion and the conclusion reached. See also *Whelen* v. *Phillips,* 151 Pa. 312, 25 Atl. 44; *Phillip's Estate,* 205 Pa. 511, 55 Atl. 212.

There being no proof of actual fraud or imposition practised upon the plaintiff, the mere fact that she did not receive full market value for her interest did not warrant the rescission of her conveyance, and the court below was right in so holding.

It remains to inquire how far the validity of the conveyance is affected by the relations of the parties. The evidence does not show any contractual or active fiduciary relation. The defendant Henry P. Huddleson was the husband of the daughter of Thomas W. Hay, the trustee in the will, who was the great-uncle of plaintiff.

While the relations between plaintiff and her two sisters were strained, defendant was the intimate friend of all of them. Plaintiff regarded him as a friend and kinsman, and reposed implicit confidence in him. He had, upon occasion, given her and her mother and sisters advice and assistance. He had graduated from a law school in the District of Columbia, but had not been admitted to the bar. At the time of, and for some years before, the transaction he had been employed in one of the Departments of the government at the capital. He had never acted as the attorney of the parties in respect of the administration of the estate; but had at plaintiff's request, prepared deeds relating to the conveyance of the mother's estate, for which he made no charge and received no compensation. The plaintiff, apprehending that an action for damages might be brought against her mother, suggested the conveyance by her. It seems that some mistake was made in including other property than this particular interest, that necessitated a reconveyance, and another deed confined to the lot in which there was this community of interest was executed. Plaintiff was a woman of mature age and managed her own affairs. She was familiar with the property, and had every opportunity to ascertain its value. Sometime before the sale to the defendant she had invested in an ice plant in Florida, the machinery in which seems to have been erected subject to a payment therefor of $3,000. She was unable to pay the money, and was threatened with the removal of the machinery. She believed that the ice plant would prove remunerative if the machinery could be retained, and that there would be a destructive loss if it were removed. She visited Washington in an endeavor to borrow money upon her said interest, in which she did not succeed. Defendant and an attorney to whom she applied were unable to assist her. Hearing that she would probably have an offer from a well-known investor in speculative titles, of $6,500, for her interest, the defendant wrote to her advising her to sell out the ice plant at a sacrifice rather than sell to said person, and suggesting that, if she was determined to sell the Washington property, he might sell it for her if she would name a price. She,

thinking that her sisters might offer to purchase her interest, wrote that she would probably sell to the aforesaid party. This was also written as an inducement to them to consent to a sale.

She wrote defendant, saying that, while she thought her interest worth $20,000, she would sell for $10,000. Defendant then wrote, saying that he would purchase at $10,000, provided the sisters would consent to the conveyance. The sisters preferring that defendant rather than a stranger would make the purchase, defendant submitted the terms of payment, which, with some changes, were accepted by plaintiff. When the deed was sent to plaintiff to execute, the consent of the sisters was indorsed thereon. She executed, acknowledged, and returned it, and the consideration was paid. While, as we have said, there were not express fiduciary relations between the parties, there was such relation as that of confidence reposed by the plaintiff, and the probable amount of influence on the part of the defendant growing out of that confidence is of a nature that a court of equity would not permit an advantage to be taken and retained in a transaction which could not be impeached where no such confidential relations existed. *Tate* v. *Williamson,* L. R. 2 Ch. 55, 15 L. T. N. S. 549, 15 Week. Rep. 321. That case is a leading one on the subject of transactions between persons where relations of confidence exist, and has been cited with approval by us in several cases. *Murray* v. *Hilton,* 8 App. D. C. 281–285; *Holtzman* v. *Linton,* 27 App. D. C. 241–256. As was said in *Murray* v. *Hilton, supra:* "Where those relations are contractual and active, as in the case of trustee and beneficiary in a deed or will, of guardian and ward, and of attorney and client, and the like, the safest rule is to declare void, on grounds of public policy and utility, all conveyances made by the *cestui que trust,* and so forth, upon his application therefor within a reasonable time, subject, of course, to the return of any actual benefits received. Where, however, the relations are not of this active and positive character, but are imputed, in equity, to certain special circumstances and conditions that may exist for a time between particular persons, or in a particular case, the rule cannot, with good rea-