# Janecek et al. *v.* Schaffer, Appellant.

*Replevin—Fraud—Illiterate party to contract—Reliance on statement by other party—Case for jury.*

In an action of replevin to recover the possession of a pair of horses it appeared that the defendant had given a bill of sale for the horses upon the fulfilment of the requirements of a bailment lease. It further appeared that after the defendant had executed the bill of sale for the horses, he demanded payment for the expenses incident to replevin proceedings under the lease, and that the plaintiff thereupon executed another lease for the horses which he had just bought, which he averred he thought was a promissory note. The rent not having been paid, the defendant repossessed himself of the horses and the plaintiff brought the action of replevin to recover the horses or the value thereof.

456, (1922).]    Syllabus—Opinion of the Court.

The plaintiff was an illiterate person who averred that he signed the lease under the impression that it was a promissory note and had nothing to do with the horses.

Under such circumstances, the case was for the jury on the question of fraud and a verdict for the plaintiff will be sustained.

Argued March 7, 1922.    Appeal, No. 43, March T., 1922, by defendant, from judgment of C. P. Luzerne Co., Nov. T., 1916, No. 998, on verdict for plaintiffs in the case of John Janecek et al. v. Elmer Schaffer.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.    Affirmed.

Replevin to recover the possession of a pair of horses. Before WOODWARD, J.

The facts are stated in the opinion of the Superior Court.

The jury rendered a verdict in favor of the plaintiff in the sum of $682 and judgment thereon.    Defendant appealed.

*Errors assigned* was the charge of the court, answers to points and refusal to grant a new trial.

*John H. Bigelow,* and with him *George W. Moon,* for appellant.

*Adrian H. Jones,* for appellee.

OPINION BY TREXLER, J., April 17, 1922:

In June, 1916, the defendant, Schaffer, who was a horse dealer, leased to Solenski a pair of bay horses on a bailment lease, in which the lessee agreed to pay $550 for the horses in installments within two months and thereupon, on the payment of an additional dollar, a bill of sale was to be given.    The contract contained the usual rigorous covenants, among them one against sale by the lessee.    During the continuance of the bailment, Solenski sold the horses to Janecek and Schaffer the

lessor thereupon retook possession, although he had been paid all of the consideration except $30. On the last day of the two months' bailment, Solenski with Janecek came to Schaffer and paid to him the balance due under the lease, to wit, $30 and $1 for the bill of sale and in addition $2.50 interest, and Schaffer gave the horses to Solenski and a receipt as follows: "Aug. 23, 1916. Received of John Solenski Thirty-Three 50/100 Dollars. Positively no guarantee of any kind given against sickness, lameness or death, which all horses are subject to, and the same is distinctly understood by the purchaser who assumes all risks upon accepting the same when our responsibility ceases. Elmer Schaffer." Schaffer demanded in addition to the money paid to him, the sum of $60 for expenses in recovering the horses and it is in connection with this part of the transaction that the dispute between the parties rises. The plaintiff Solenski as principal and Janecek as surety, signed another bailment lease for the horses in which the rent was fixed at $60 and $1 in addition for passing the title if the rent were paid. The rent not having been paid, Schaffer repossessed himself of the horses and Janecek brought this action of replevin to recover the horses or the value thereof. Unless the defendant can get rid of the written contract, Schaffer had the right to repossess himself of the animals. Solenski says that when the paper was signed, Schaffer stated that it was for his expenses and had nothing to do with the horses and that the paper was signed after Schaffer had given him the receipt, above set out, in which Solenski is termed a "purchaser." Janecek testifies to the same thing, that Schaffer told him that it was a note that had nothing to do with the horses. Both Janecek and Solenski were foreigners, unable to read English. The question as to whether Schaffer had anything to lease after he had accepted the balance due on the lease, including the dollar required to pass title, was not raised at the trial. The validity of the second lease, as indicated above, was attacked by reason of the

fraud alleged to have been practiced in its procuring. This question was left to the jury, who accepted the statements of Janecek and Solenski.  We are convinced that the learned trial court was right in not directing a verdict for the defendant.  We have here the testimony of two witnesses, who declare that they were assured that the paper they signed had nothing to do with the horses.  If they were misled by Schaffer's misrepresentations as to its contents, they were not bound by the contract: Green v. North Buffalo Township, 56 Pa. 110; Clayton v. Consolidated Traction Co., 204 Pa. 536.  The receipt in full given by the defendant lends plausibility to their narrative.  The disproportion between the value of the horses and the value fixed in the lease is also significant.  It is very unlikely that Janecek, who seems to have been capable of raising money from time to time, would have suffered the loss of a pair of horses worth $550 for the failure to pay $60: Bierer's App., 92 Pa. 265; Davidson v. Little et al., 22 Pa. 245. A party who cannot read should demand to have a contract read or explained to him, before he signs it.  However, in the case before us the plaintiff had the right to rely upon the statement of the defendant as to what the paper was.  To ask to have it explained was not required of him, for Schaffer had already volunteered information as to what the paper was.  There were two witnesses to prove the facts and the circumstances surrounding the entire transaction lend color to the claim that advantage was sought to be obtained by fraud.  The proof measured up to the required standard.

The testimony as to the value of the horses was rather meager, but we think there was enough.  When the first lease was made, the value of the horses was fixed at $550.  This was some evidence of value: Stern v. Martin, 76 Pa. Superior Ct. 164.  There was also evidence that the horses continued in good condition thereafter.  Moreover the question of lack of proof of value was not raised at the trial, nor was there an exception taken as to the

instructions of the court in this regard. The question was first directly raised in a motion for a new trial. See Maculuso v. Humboldt Fire Insurance Co., 271 Pa. 489.

The defendant also raises the question for the first time that the plaintiff has not proved title, that under the testimony in the case the title is in Solenski and not in Janecek. Had the matter been definitely raised at the trial, it could have been very easily cleared up and disposed of. Solenski and Janecek had no dispute as to the title between them. Solenski had sold the horses to Janecek, oblivious of the effect of such sale on the lease, and that sale although technically amounting to nothing in passing title, Solenski has evidently considered as binding him. This is very apparent from the attitude which he took at the trial and had he been asked no doubt, he would have stated, the ownership was in Janecek.

All assignments are overruled and judgment is affirmed.