No. 16,149.

## McClure v. Raben.

CONVEYANCE.—*Sale of Expectancy by Heir.*—*When not Enforceable After a Merger of Expectancy Into a Vested Estate.*—*Against Public Policy.*—*Necessary Allegations and Proof.*—*Insanity of Ancestor.*—Where a person conveys his expectant interest in his ancestor's estate, such contracts being regarded with disfavor by the law, and as against public policy, before such contract can be enforced it must be alleged and proven that there was neither fraud nor oppression, and that the ancestor had knowledge of such contract, and acquiesced therein, and the fact that the ancestor is insane, and incapable of consenting to the contract, constitutes no exception to the rule.

From the Posey Circuit Court.

*W. Loudon* and *F. P. Leonard,* for appellant.

*G. V. Menzies,* for appellee.

COFFEY, C. J.—This case is in this court for the second time. *McClure* v. *Raben,* 125 Ind. 139.

The cross-complaint of the appellee, which was adjudged insufficient, is fully set forth in the opinion in that case, and sets up, among other things, that Samuel D. McReynolds purchased from the appellant, during the lifetime of his mother, his expectant interest in the land described in such cross-complaint; that McReynolds paid the full value of such interest, and received from the appellant a quitclaim deed for such land; that the contract by which the appellant sold and conveyed to McReynolds his expectant interest in said land was *bona fide*, and without any fraud practiced on Leah McClure, the mother of the appellant, who was then the owner of such land, and who was then insane.

The cross-complaint further alleged that McReynolds had conveyed his interest in the land in controversy to the appellee.

Upon a return of this cause to the Posey Circuit Court, the appellee filed an amended cross-complaint against the appellant, in which he alleged that "heretofore, to wit: on the 30th day of March, 1853, Leah McClure, the mother of said Joseph McClure, was a widow, and was the owner in fee simple, and in possession of all the lands described in the deed hereinafter mentioned, containing about 318 acres, more or less.

" That for a long time prior to said date, at said date and continuously therefrom till the date of her death, to wit, the 1st day of March, 1886, said Leah McClure was a person of unsound mind, incapable of managing her own estate or making or ratifying contracts of her own or affirming or consenting to contracts made by her children, of and concerning her, the said Leah's, estate.

" That on the 1st day of March, 1886, said Leah died, in Posey county, Indiana, intestate, leaving as her only heirs in law the defendant, Joseph McClure, and six other persons whose names are unknown.

" That on the date first above mentioned, the 30th day of March, 1853, the defendant, Joseph McClure, was of the age of twenty-one years, and an heir expectant or presumptive of his mother, the said Leah McClure, and as such expectant or presumptive heir expected to inherit in fee simple one-seventh in value of said land, about thirty-nine and three-quarter acres of the same.

" That the actual, full and fair market value of said land, valued as an absolute vested estate per acre, on the 30th day of March, 1853, was seven dollars per acre, making the actual, full and fair market value of the entire interest of said Joseph McClure valued at that date as an absolute and vested estate, the sum of two hundred and seventy-eight dollars and twenty-five cents.

" That on said date, March 30, 1853, the defendant Joseph McClure, by his quit-claim deed, a copy of which is filed herewith as a part of this paragraph, marked ex-

hibit "A," conveyed to one Samuel D. McReynolds, his interest in the land therein described, as heir presumptive of his mother, the said Leah McClure, in consideration of the sum of three hundred dollars, that sum being at that date in excess of the actual, full and fair market value of an undivided one-seventh part in value of said land, valued at that time as an absolute and vested estate in fee simple.

"That said sum of three hundred dollars was paid by said McReynolds to the defendant, Joseph McClure, in good faith, said McReynolds and said defendant Joseph McClure, each knowing and believing at the date of the execution of the conveyance aforesaid, that the said Leah McClure was and forever would remain hopelessly insane and incapable of managing her estate, and that the only event which could defeat the defendant, Joseph McClure, from subsequently becoming the owner of an absolute estate in fee simple, of an undivided one-seventh in value of said lands, was the death of said Joseph McClure before his mother Leah McClure.

"That at or near the time of the conveyance aforesaid, several of the children and presumptive heirs of Leah McClure, knowing that said Leah was hopelessly insane, and believing that such insanity would continue without a lucid interval, sold and conveyed, as heirs presumptive of said Leah, their interests in said lands for the actual, full and fair market value of the same at the date of such conveyance as absolute estates in fee simple.

"That in the selling of his said interest by the defendant Joseph McClure, and the buying of the same by said McReynolds, there was neither fraud, concealment, catch-bargaining nor overreaching by the one upon the other, nor upon the said Leah McClure, but said sale and conveyance was made *bona fide* for the actual, full and fair market value of an undivided one-seventh part in value of said land valued at the time as an absolute estate in fee simple. That afterwards, to wit, on the first day of June, 1865,

said McReynolds sold and conveyed to the defendant, Anthony Raben, all his right, title and interest in the lands aforesaid purchased by him from the defendant Joseph McClure.

" That said defendant Joseph McClure claims to be the owner in fee simple of one-seventh part in value of said lands, as an heir at law of said Leah McClure, in derogation of and adversely to the title of this defendant, thereby casting a cloud upon his title to an undivided one-seventh part in value of said lands. Wherefore, this defendant prays judgment that the defendant Joseph McClure and those claiming under him may be forever inhibited and enjoined from setting up any right, title or interest to and unto said land, adverse to the right, title or interest of the defendant, and that this defendant be decreed, as against said Joseph McClure and those claiming under him, to be the owner in fee simple of an undivided one-seventh part in value of said lands and for all proper relief."

The rules of law applied to this case, as it is reported in *McClure* v. *Raben, supra*, must remain the law of the case throughout all its subsequent stages. *Pittsburgh, etc., R. W. Co.* v. *Hixon*, 110 Ind. 225 ; *Forgerson* v. *Smith, Admr.*, 104 Ind. 246 ; *Hawley, Admr.*, v. *Smith, Admr.*, 45 Ind. 183 ; *Test* v. *Larsh*, 76 Ind. 452 ; *Dodge* v. *Gaylord*, 53 Ind. 365 ; *Braden* v. *Graves*, 85 Ind. 92 ; *Kress, Exec.*, v. *State*, 65 Ind. 106.

In this case it was said, in substance, that where no estoppel had intervened, it must be made to appear, in order that a contract such as we are considering would be adjudged of binding force, that the ancestor holding the estate should be informed of such contract, and should give his or her assent to the same. It was further held that, in the absence of such information and consent, the conveyance would be regarded by the court as against public policy. This is the rule by which this case must be governed.

After giving the authorities another careful considera-tion, we feel warranted in saying that the rule here an-nounced is the true one. All such contracts are regarded by the law with disfavor, and are presumed to be founded in fraud or oppression, so much so that one who attempts the enforcement of such a contract must allege and prove that there was neither fraud nor oppression, before he is entitled to any consideration.

Many reasons are given for this rule, among which is that in a case where the ancestor has no knowledge of the contract, he may permit his property to go under the law of descents, believing that his son, or next of kin, will re-ceive the benefit, when, in truth, it goes to an entire stran-ger, if the contract is to be enforced. This he might not be willing to do if he was informed of the facts. By keep-ing him ignorant of the facts he is induced to leave his property to a stranger, without his knowledge or consent. This is a fraud upon him. As to the manner in which such contracts may affect the public, we adopt the language of Chief Justice Parsons, in the case of *Boynton* v. *Hub-bard*, 7 Mass. 112, in which he said:

" Heirs who ought to be under the reasonable advice and direction of their ancestor, who has no other influence over them than what arises from a fear of his displeasure, from which fear the heirs may be induced to live indus-triously, virtuously and prudently, are, with the aid of money speculators, let loose from this statutory control, and may indulge in prodigality, idleness and vice, and taking care by hyprocritically preserving appearances not to alarm their ancestor, may go on trafficking with his ex-pected bounty, making it a fund to supply the wastes of dissipation and extravagance. Certainly the policy of the law will not sanction a transaction of this kind, from a regard to the moral habits of its citizens."

Much more might be said as to the objectionable char-acter of the class of contracts now under consideration, but

we think it sufficient to say that where such a contract is not made known to the ancestor it is illegal as being contrary to public policy.

The ancient rule of the courts of chancery, to the effect that a man may bind himself to do any thing which is not in itself impossible, and that he ought to perform his obligations, is subject to many exceptions, among which is that he should not be compelled to perform a contract which is against public policy.

Inasmuch as the ancestor of the appellant in this case was insane, and incapable of consenting to this contract, it is contended the reason for the rule does not apply, and that, therefore, we should hold that such consent was not necessary. In other words, it is contended we should hold that where the ancestor is not competent to assent, an exception to the rule requiring such assent exists.

We know of no precedent for such an exception, and without such precedent we could not so hold without extending the rule. In a class of contracts so much in disfavor as the class to which this belongs, we do not think the rules should be extended beyond that required by the authorities.

The court erred, in our opinion, in overruling the demurrer to the cross-complaint of the appellee set out in this opinion.

Judgment reversed, with directions to the Circuit Court to sustain the demurrer of the appellant to the cross-complaint of the appellee.

Filed February 3, 1893.