ANNA PIKE *vs.* LESLIE A. PIKE.

Suffolk.     January 15, 1929. — February 4, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Contract,* Validity, To influence testator as to will.  *Will.*

A promise to a woman by one, whom she and her husband had adopted
     as a son, that, in consideration of her influencing her husband, who
     "was in a very serious condition" physically, not to make a will which
     he wished to make and which would have given her practically all of
     his property and would have revoked a previous will obtained by the
     adopted son through fraud and undue influence making him residuary
     legatee, he after the husband's death would pay her all the proceeds
     from the sale of the real estate instead of one third of the real estate
     given by the will then standing and also $6,000 given by that will, is
     unenforceable, being contrary to public policy.

CONTRACT.  Writ dated September 28, 1926.

In the Superior Court, the action was tried before *Whiting,*
J.  Material evidence is stated in the opinion.  The jury
found for the plaintiff in the sum of $8,663.43.  Under leave
reserved in accordance with G. L. c. 231, § 120, the judge
ordered a verdict entered for the defendant.  The plaintiff
alleged exceptions.

*D. R. Radovsky,* (*N. Fink* with him,) for the plaintiff.
*D. J. Lyne,* (*J. P. Rooney* with him,) for the defendant.

CARROLL, J.  The defendant is the adopted son of the
plaintiff and Morris Pike.  The plaintiff is the widow of
Morris Pike.  The declaration alleges that Morris died May
22, 1925; that the defendant on or about November 12, 1924,
influenced Morris by fraud and undue influence to make a
will, referred to as will "1" or the old will; that in April, 1925,
Morris Pike, appreciating that an injustice had been done to
the plaintiff, prepared a will marked "2"; that the defendant
on learning that will "2" had been written "made threats to
the said Morris Pike" to restrain the execution of will "2"
and promised the plaintiff that, if she persuaded her husband
not to execute the new will, and permitted the old will to
stand and be probated, he would pay to her the proceeds

from the sale of the real estate in addition to the sum of $6,000 mentioned in the first will; that in reliance on this promise the plaintiff persuaded her husband not to execute the new will and signed the papers for the probate of the first will; and that the defendant has refused to carry out the agreement.

It appeared that under the first will, which has been allowed and proved in the Probate Court, the plaintiff was given $6,000 and one third of the real estate; the residue of the property was given the defendant. By will "2," which was not executed, the defendant was given $5 and the residue of the estate was given the plaintiff. There was a verdict for the plaintiff. Under leave reserved, a verdict was entered for the defendant and the plaintiff excepted.

The plaintiff testified that a month before her husband died she talked with him about a new will. An attorney was sent for and the new will prepared and placed on the table in the husband's room. He was then sick and in bed. On the evening of the day she left the will with her husband, the defendant called on him and she heard loud talking in the husband's room. The defendant said to her: "Mother, won't you believe me? I will tell you what I will do. I will make you a promise, and I promise faithfully that I will give you all the money from the house, and then you have your $6,000 in the will, provided you go in to dad and tell him not to sign the new will. Are you satisfied?" Thereupon the plaintiff and defendant went to the husband's room and she informed him of the arrangement by which she was to receive all the proceeds of the sale of the real estate. He asked if she was satisfied and she said "Yes" and told her husband not to bother to sign the new will. She further testified that her husband died four weeks after this interview; that he had been sick and confined to his bed for over a year and "was in a very serious condition."

The judge was right in directing a verdict for the defendant. The contract sued on was against public policy: it is unenforceable. The declaration alleged that the first will was made by the fraud and undue influence of the defendant and the second will was made to remedy the injustice done the plaintiff; that the defendant on learning of the new will

threatened the testator to restrain him from executing this will; and that the promise of the defendant to pay the plaintiff the proceeds of the real estate was in return for the plaintiff's promise to persuade her husband not to execute the new will, and to permit the old will to stand.   The plaintiff's testimony was to the effect that the consideration for the promise of the defendant was her promise to persuade her husband not to execute the new will.

When the plaintiff and defendant entered into this agreement the plaintiff's husband was a sick man; he was, according to her testimony, in a very serious condition.   Yet she made an agreement to persuade him not to make the will he desired to execute in order that the defendant could carry out his promise to her.   The plaintiff made use of her influence over her husband that she might profit.   An agreement founded on such a consideration has evil tendencies; it was contrary to upright and fair dealing.   The husband had no knowledge of her agreement to persuade and influence him. As stated by Chief Justice Shaw in *Fuller* v. *Dame*, 18 Pick. 472, at page 481: "The law goes further than merely to annul contracts, where the obvious and avowed purpose is to do or cause the doing of unlawful acts; it avoids contracts and promises made with a view to place one under wrong influences, those which offer him a temptation to do that which may injuriously affect the rights and interests of third persons.   A person having property . . . may make a will in favor of whom he pleases.   A common friend may lawfully represent to him, the expediency and fitness of making a bequest in favor of a particular individual . . . .   But any promise to pay another for soliciting a will in his favor, would be void."   This principle is applicable here.   The promise was to persuade the husband not to execute the new will. Mrs. Pike could advise her husband not to execute the new will if she was acting from disinterested motives, but an agreement to persuade him not to execute this will could not be the foundation of a valid contract.   The contract relied on was void and against public policy.   *Rice* v. *Wood*, 113 Mass. 133, 135.   *Re Lennig's Estate*, 182 Penn. St. 485, 499.

*Exceptions overruled.*