JOHN F. GADSBY *vs.* JOSEPH C. GADSBY & others.

Middlesex.    November 13, 1930. — April 1, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Contract,* Consideration, Validity, Construction, For division among heirs. *Equity Jurisdiction,* Specific performance. *Frauds, Statute of. Evidence,* Relevancy and materiality.

A man, desiring to leave his estate, consisting of land valued at about $10,000 and personalty valued at about $34,000, equally to his three sons, made a will which would give cash to one of them, who was nominated as executor, cash and land to the second son, and to the third son land, subject to an estate for life in his wife, of greater value than the gifts to the other sons, and the residue to the sons equally. The wife died before the testator. His physical condition at that time making it inadvisable to discuss with him the matter of a change in the will by reason of the devise to the third son being relieved of the wife's life estate, it was agreed orally among the sons that, if such change were not mentioned to the testator and the will were probated and administered as it then was written, the land devised to the second and third sons should be sold "as soon as possible" and an accounting had to accomplish an equal division of the whole estate among the three sons; and that the first son would make no charge for his services as executor. Such arrangement, after sale of the land, would require no payment by the second son, and would require the third son to pay about $266 to the second son and about $166 to the first son. The testator died shortly thereafter without having known of his wife's death. The will was admitted to probate, and the first son promptly paid the debts of the estate, paid himself and the second son their legacies and, upon refusal of the second and third sons to carry out the oral agreement to sell their land and at a time when he had not made any charge for his services as executor but had not filed his final account, brought a suit in equity against the second and third sons to compel a sale of the defendants' land and an accounting. The defendants pleaded the statute of frauds, but did not set up the defence that the plaintiff had an adequate remedy at law. *Held,* that

(1) The plaintiff's promise not to make a charge for his services as executor was consideration for the defendants' promises to sell their land and to account for the proceeds;

(2) The plaintiff was not prevented legally or morally from suggesting to the testator, without using undue influence, a change in the will; and his forbearance to do so also was consideration for the defendants' promises;

(3) The agreement was not unconscionable nor obtained by reason of any advantage taken of the defendants;

(4) In the circumstances, by the plaintiff's refraining from making a charge for his services as executor, the defendants received an adequate consideration for their promises; and it was unnecessary to decide whether his promise to forbear suggesting to the testator a change in the will was adequate consideration;

(5) In the circumstances, the agreement being a reasonable one for the disposition of the estate of the testator among his heirs or next of kin after his death substantially in accordance with his wishes, it was not invalid by reason of the fact that it was made without the knowledge or consent of the testator;

(6) The agreement was not against public policy by reason of the circumstance that the plaintiff was to receive a benefit by forbearing to suggest a change in the will to the testator: in the circumstances, it was meritorious for the plaintiff to refrain from advising his father to change his will;

(7) The suit was substantially one for specific performance of the defendants' promises, and was within equity jurisdiction;

(8) Even if the agreement were one within the scope of the statute of frauds, which was not decided, it was taken out of that statute by the plaintiff's forbearance, in reliance upon the promises of the defendants, to "speak to the father about changing his will so as to effect an equal distribution of the estate";

(9) The agreement contemplated that the sale of the defendants' land should take place concurrently with the administration of the estate by the plaintiff;

(10) The plaintiff was not required to prove that the estate had been fully administered, since his ability to make a final settlement thereof in accordance with the will was apparent;

(11) A final decree should be entered that, upon the allowance by the Probate Court of the final account of the plaintiff as executor, showing no charge for his services as such, the defendants should sell the land devised to them as soon as possible, making reasonable efforts to obtain the highest possible price therefor; and that each of the defendants should pay to his brothers such parts of the proceeds of the sale of his real estate as, taken in connection with the distribution made by the plaintiff as executor, would effect an equal division of the estate.

A master in the suit in equity above described made a finding as "to the amount which would be allowed by the inheritance tax division as a fee for administering the father's and mother's estate and for services as attorney." An exception by the defendants to such finding was sustained by an interlocutory decree. Upon appeal by the plaintiff from such decree, it was *held,* that, although the amount of a proper fee for administering the estate of the father was material on the question of adequate consideration for the defendants' promises, the amount which would be allowed by the inheritance tax division as a fee was not material on the question of the proper amount; and the decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on May 6, 1929, having been commenced by a writ in trustee process dated April 3, 1929.

The bill, and material facts found by a master to whom the suit was referred, are described in the opinion. The suit was heard by *Whiting*, J., who made certain rulings, in accordance with which there were entered, by order of *Lummus*, J., an interlocutory decree sustaining one of the defendants' objections to the report, as stated in the opinion, and otherwise confirming the report; and a final decree dismissing the bill. The plaintiff appealed.

*M. C. Taylor*, for the plaintiff.

*J. H. Hurley*, for the defendants.

FIELD, J. Charles Gadsby, of Cambridge, died January 23, 1926, leaving a will executed in 1923, which was allowed. His wife died January 13, 1926. By this will the testator gave to his son, John F. Gadsby, the plaintiff, $5,000, to his son Joseph C. Gadsby, one of the defendants, $1,000 and a house of the value of $3,900, and to his son Charles J. Gadsby, another defendant, two houses of the aggregate value of $5,600, subject, however, according to the terms of the will, to a life estate in his wife, the mother of the three sons, and provided that the remainder of his estate should be divided equally among these sons. The plaintiff was named executor of the will and qualified as such.

The plaintiff in his individual capacity brought this bill in equity in the Superior Court against his brothers, hereinafter referred to as the defendants, joining himself, as executor of his father's will, as a party defendant — as to which joinder no question is now raised — alleging an agreement of the three brothers that, the mother having died, the father's estate should be distributed among them equally and praying that "a special master be appointed to sell . . . or to value, the real estate received by the defendants and that thereupon an accounting should be had between the plaintiff and the defendants, based upon the net proceeds of such sale or upon the valuation of said master, so that the agreement for an equal distribution of the estate shall be accomplished." There was also a prayer

for an accounting for other moneys, which was waived by the plaintiff, and a prayer for general relief. The defendants pleaded the statute of frauds and other defences but at no time set up the defence that the plaintiff had an adequate remedy at law. The case was referred to a master whose report, modified in one particular, was confirmed by an interlocutory decree. By a final decree the bill was dismissed with costs. The plaintiff appealed from the interlocutory decree so far as it modified the master's report, and from the final decree.

The master found the facts as above set forth. He found also that it was the intention of the testator "to make as equal a distribution of his property as possible between his three sons"; that each of them "had knowledge of the will . . . [the testator] had made"; that after the death of the mother the defendant "Joseph C. Gadsby suggested to the plaintiff that the intention of the father to leave his property equally to each would be defeated as the real estate devised to [the defendant] Charles J. Gadsby would be relieved of the life estate of the mother and . . . requested the plaintiff to speak to the father about changing his will so as to effect an equal distribution of the estate . . . that at this time on the advice of the physician attending the father that on account of the father's condition, it would be inadvisable to discuss this matter with him, the plaintiff and the defendants orally agreed between them that if the matter was not mentioned to the father and the will was probated and administered according to its tenor, the real estate devised to the defendant Charles J. Gadsby and the real estate devised to the defendant Joseph C. Gadsby would be sold as soon as possible and an accounting had so that an equal division of the whole estate between the three brothers would be accomplished and that the plaintiff agreed to make no charge for his services in administering the estate."

The master found that both "father and mother were seriously ill and the mother's death . . . was not made known to the father on account of his serious condition" and that he "died . . . without notice of his wife's decease."

From this finding it is to be inferred — and it is not controverted by the defendants — that the matter of a change in the will of the testator by reason of the death of his wife was not "mentioned" to him by the plaintiff. The master found also that "the estate of the father was administered promptly by the plaintiff and the legacies to himself and Joseph C. Gadsby paid and the residue of the estate, with the exception of $1,600 reserved for the payment of bills, distributed between the three brothers twenty-two days after his appointment as executor . . . that all the bills of the estate were paid and . . . $150 of the father's estate remains in the executor's hands," that "no charge against the estate has been made by the plaintiff for his services as executor or attorney, but no final account has been filed by him as executor," and that "the defendants, Charles J. Gadsby and Joseph C. Gadsby, refused to carry out the agreement for the sale of their houses."

*First.* On the facts found by the master, there was an agreement for the transfer, after the death of the father, of such parts of the proceeds of the sale of the defendants' expectancies as devisees under his will as would be necessary to effect an equal division of the whole estate among the three brothers. Such an agreement is binding upon the parties if it meets the usual requirements of a contract and, in addition, certain special requirements due to its peculiar nature. Not only must the defendants' promises be supported by sufficient consideration, but the agreement must provide for "adequate consideration" for the performance of these promises, and it must appear that the agreement was "entered into fairly" and that "the bargain is not unconscionable or obtained by oppression or by taking unjust advantage of the necessities" of the presumptive devisees. *Jenkins* v. *Stetson*, 9 Allen, 128, 132. See *Fitch* v. *Fitch*, 8 Pick. 479, 482; *Trull* v. *Eastman*, 3 Met. 121, 123. Compare *Boynton* v. *Hubbard*, 7 Mass. 111.

The requirements, above stated, were met by the agreement. The plaintiff's promise "to make no charge for his services in administering the estate" of his father was sufficient consideration for the defendants' promises. More-

over, the plaintiff's forbearance to suggest to the father a change in his will, because of his wife's death, if contemplated as consideration for the defendants' promises, would have been sufficient to support them. Such forbearance was not insufficient as consideration on the ground that it was required by legal duty. It was not so required. Whatever may have been the plaintiff's moral obligation under the circumstances, he had a legal right to inform the testator of his wife's death and, without using undue influence, to suggest a change in his will to meet the changed conditions. Nor would such a suggestion by the plaintiff to his father have been so objectionable on moral grounds that forbearance to exercise this legal right would be insufficient as consideration for the defendants' promises.

The bargain was not unconscionable nor obtained by reason of any advantage taken of the defendants. Moreover, under the agreement they were to receive adequate consideration for the performance of their promises. Each defendant was to receive from the plaintiff, in exchange for the transfer of his expectancy to the extent agreed upon, a benefit equivalent to one third of a fair charge for administering an estate valued at $44,109.75, of which $34,609.75 was personalty. If the real estate was sold at the valuation placed upon it by the master, the defendant Joseph C. Gadsby would pay nothing of value for this benefit and would, moreover, receive from the other defendant the sum of $266.66, while the defendant Charles J. Gadsby would pay for this benefit the sum of $433.32, of which $166.66 would be paid to the plaintiff and the remainder to the defendant Joseph C. Gadsby. We cannot say that the benefit derived by Charles J. Gadsby from the settlement of the estate of his father without charge was so inadequate a consideration for the payment, out of the proceeds of the sale of his real estate, of this sum of money — or such lesser or greater sum as might result from the sale of the real estate for a price different from the amount fixed as its value by the master — as to invalidate the contract. Obviously the consideration passing to Joseph C. Gadsby would not be inadequate. In view of these facts, it is un-

necessary to determine whether, if the plaintiff had not agreed to administer the estate of his father without charge, the requirement of adequate consideration would have been met (see, however, *Boynton* v. *Hubbard,* 7 Mass. 111, at page 120, and the comment therein of Chief Justice Parsons upon the case of *Buckley* v. *Newland,* 2 P. Will. 182), or to determine whether the plaintiff's forbearance would constitute adequate consideration. Compare *In re Lennig's Estate,* 182 Penn. St. 485, 499.

The agreement did not lack binding force because of the fact that it was made without the knowledge and consent of the father. In several cases in this jurisdiction (*Fitch* v. *Fitch, supra, Trull* v. *Eastman, supra,* and *Jenkins* v. *Stetson, supra*) it has been stated that an assignment of an expectancy is valid if, in addition to meeting other requirements, it was made with the knowledge and assent of the ancestor, but in these cases the knowledge and assent of the ancestor were shown and the court was not called upon to decide whether an assignment without such knowledge and assent would have been valid. In *Fitch* v. *Fitch,* however, where an assignment to two brothers of the assignor of his expectancy in their father's estate was in question, it was said that "We deem the allegation of the knowledge of the father, and his consent to the transaction, essential to the validity of the declaration" (page 483), and in *Jenkins* v. *Stetson,* it was said, with reference to an objection to the validity of an assignment by a daughter of her expectancy in the estate of her mother to a stranger, that "There might have been force in this objection, if it had appeared that the bond was given and the agreement made without the knowledge or assent of the mother. It might then have been deemed to have operated as a deceit on her, on the principle stated in *Boynton* v. *Hubbard,* 7 Mass. 112, 122." (Page 132.) The statements in these cases were based directly or indirectly upon the case of *Boynton* v. *Hubbard,* and are not to be regarded as extending the principle on which it was decided. In that case the assignment was to a stranger and was said to be "a deceit on the ancestor" and "a mere wager" and, consequently, against public policy and "void as well at law

as in equity." (Pages 120, 121.) The court, however, distinguished the case of *Buckley* v. *Newland*, where there was an agreement between members of a family not known to the ancestor for the equal division of his estate, and said that the defendant, "who had the greater part [of the estate] given to him, was compelled to execute the agreement. . . . The tendency of the agreement was to guard against undue influence over the testator; and it could not be unreasonable to covenant to do what the law would have done, if . . . . [he] had died intestate." (Page 120.) It would seem, therefore, that the principle of *Boynton* v. *Hubbard*, is not applicable to a reasonable agreement for the disposition of the estate of an ancestor among his heirs or next of kin after his death and is not controlling in the present case. It follows that the cases previously decided by this court do not require the conclusion that, in the present case, the agreement between the plaintiff and the defendants was not binding because made without the knowledge and consent of the father, though doubtless such lack of knowledge and consent is material on the issue of the reasonableness of the agreement. This result is supported by cases in other jurisdictions. *Bridge* v. *Kedon*, 163 Cal. 493, 502. *Betts* v. *Harding*, 133 Iowa, 7. *Field* v. *Camp*, 201 Fed. Rep. 682. *Earl of Aylesford* v. *Morris*, L. R. 8 Ch. 484, 492. See also *Walker* v. *Walker*, 67 Penn. St. 185, 195; *Hale* v. *Hollon*, 90 Texas, 427. Compare, however, *McClure* v. *Raben*, 133 Ind. 507; *Stevens* v. *Stevens*, 181 Mich. 438.

The agreement was not against public policy by reason of the provision therein for the plaintiff's forbearance to "speak to the father about changing his will." It is true that the plaintiff, even if not strictly in a fiduciary relation to his father, could not have enforced an agreement, not disclosed to the father, whereby the plaintiff was to be paid for suggesting to the father that he should change his will or that he should not change it. Such an agreement is against public policy, even if no harmful result is shown, because its tendency is necessarily harmful. A suggestion made in accordance with such an agreement is not what it purports to be — disinterested advice. The person making it attempts to

serve two masters. *Fuller* v. *Dame*, 18 Pick. 472, 481–482.
*Rice* v. *Wood*, 113 Mass. 133, 135. *Pike* v. *Pike*, 266 Mass.
186. See Williston on Contracts, § 1737. This principle,
however, is inapplicable to an agreement for a reward for
refraining from making any suggestion, unless, as is not the
case here, the relation between the person contracting and
the testator was such that refraining from suggestion would
be a breach of duty to the testator or properly might be relied
upon by him as purporting to amount to affirmative, disin-
terested advice. The plaintiff was not holding himself out
to his father as an adviser and it was not contemplated by
the agreement that he should do so. Under the circum-
stances disclosed it was meritorious for him to refrain from
advising his father to change his will in the plaintiff's favor
and an agreement with other persons interested in the
father's welfare, whereby the plaintiff was to be paid for so
doing, cannot be said to be so repugnant to good morals as
to be unenforceable by him. Indeed the tendency of the
agreement as a whole was good rather than bad, since it
tended to effectuate the father's intention, as found by the
master, "to make as equal a distribution of his property as
possible between his three sons," without causing him annoy-
ance or harm during his sickness.

*Second.* The plaintiff is entitled to relief in this suit. It
is, in substance, a suit for specific performance of the de-
fendants' promises and within the general scope of equity
jurisdiction. See *Capen* v. *Capen*, 234 Mass. 355, 360. We
need not consider whether the plaintiff has an adequate
remedy at law, and, if he has, whether this defence, sea-
sonably made, would have been fatal to the suit, for the
defence has not been set up. *Baker* v. *Langley*, 247 Mass.
127, 132. Nor need we consider whether the contract was
within the statute of frauds as "a contract for the sale of
lands . . . or of any interest in or concerning them," G. L.
c. 259, § 1, (4), as contended by the defendants (see *Trow-
bridge* v. *Wetherbee*, 11 Allen, 361, 364; *Gary* v. *Newton*,
201 Ill. 170), for the plaintiff's forbearance to "speak to the
father about changing his will so as to effect an equal dis-
tribution of the estate," in reliance upon the defendants'

promises, took the contract out of the statute. Such forbearance placed the plaintiff "in a situation which is a fraud upon him, unless the agreement is fully performed." *Curran* v. *Magee*, 244 Mass. 1, 5. See *Glass* v. *Hulbert*, 102 Mass. 24, 35–36; *Harrell* v. *Sonnabend*, 191 Mass. 310.

The defendants have refused to perform their promises. All conditions precedent to performance by them have been fulfilled. The matter of a change in the will "was not mentioned to the father and the will was probated." The estate has been administered according to the will except that $150 remains in the hands of the plaintiff as executor and he has filed no final account as such. So far he has made no charge "for his services in administering the estate." Since the real estate was to be "sold as soon as possible" the contract is to be interpreted as contemplating that such a sale should take place concurrently with administering the estate. The ability of the plaintiff to make a final settlement of the estate in accordance with the will is apparent from the findings of the master. The plaintiff, therefore, was not required to prove that the estate had been fully administered (see *Roche* v. *Fairbanks*, 254 Mass. 7, 9–10), but the decree for the plaintiff must make performance by the defendants conditional on concurrent action by the plaintiff in bringing the estate to final settlement and making no charge therefor. See *Noyes* v. *Bragg*, 220 Mass. 106; see also Williston on Contracts, §§ 1430, 1440.

*Third.* There was no error in the interlocutory decree in that it modified the master's report and confirmed the report as modified. The modification struck out the finding as "to the amount which would be allowed by the Inheritance Tax Division as a fee for administering the father's and mother's estate and for services as attorney." The amount of a proper fee for administering the estate of the father was material on the question of adequate consideration, but the amount which would be allowed by the inheritance tax division as a fee was not material on the question of the proper amount.

It follows that the interlocutory decree must be affirmed,

but that the final decree must be reversed and a decree entered, with costs as against the defendants Joseph C. Gadsby and Charles J. Gadsby, that upon the allowance by the Probate Court of the final account of the plaintiff as executor of the will of Charles Gadsby, showing no charge for his services in administering the estate, the defendants Joseph C. Gadsby and Charles J. Gadsby shall sell the real estate devised to them, respectively, by the will of Charles Gadsby, as soon as possible, making reasonable efforts to obtain the highest possible price therefor, and each of these defendants shall pay to his brothers such parts of the proceeds of the sale of his real estate as, taken in connection with the distribution made by the plaintiff as executor, will effect an equal division of the estate of Charles Gadsby.

*Ordered accordingly.*