EDWARD GORDON HOOKER ET AL. *v.* ROLAND MATHER HOOKER ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued February 4—decided April 20, 1943.

*Louis M. Schatz,* with whom, on the brief, were *Nathan A. Schatz,* and *Arthur H. Schatz,* for the appellant (named defendant).

*Charles Welles Gross,* with whom, on the brief, was *Albert Stickney,* of the New York bar, for the appellees (plaintiffs).

*Reese H. Harris, Jr.,* for the defendant Central Hanover Bank & Trust Co.

MALTBIE, C. J.  Roland Mather Hooker, to whom we shall hereafter refer as the defendant, and his then wife, who is now Winifred von Mohrenschildt, entered into a separation agreement.  It recited that, as a result of unhappy differences between them, they had separated and were living apart, and provided that it should be lawful for each of them to continue so to live, each free from any interference by the other, as though they were unmarried; it stated that $15,000 had been paid to her which she agreed to accept in full satisfaction of his obligation to support her; and it also recited that the defendant had created certain trusts primarily for the benefit of their two minor children and would thereafter increase the amount of these trusts or create similar additional trusts for them

from amounts which he might receive from his mother during her life or from her estate at her death. One of the children has died and the other, still a minor, and Mrs. von Mohrenschildt are the plaintiffs in this action. The trust company which is trustee of the trusts already created was also made a defendant. The defendant's mother has died and the purpose of this action is to compel him to carry out the terms of the agreement with reference to the additional funds to be placed in trust for the children. In a counterclaim he sought to have the trusts he had created set aside. From a judgment for the plaintiffs, the defendant has appealed.

Shortly after the making of the agreement, Mrs. von Mohrenschildt went to Nevada and there brought an action for a divorce. The defendant appeared by an authorized attorney, who filed an answer for him and took part in the trial of the case. The separation agreement was submitted to the court, and the defendant by his attorney expressly waived any objection to its introduction in evidence and offered no objection to its approval by the court. The court granted the divorce, and in its decree it is recited that the separation agreement is "ratified, adopted and approved in all respects, and with the same force and effect as if said agreement were annexed hereto and set out in full in haec verba as a part hereof; and said agreement is hereby declared to be fair, just and equitable to the plaintiff, to the defendant, and to the said minor children; and the plaintiff and the defendant are both ordered and directed to comply with all of the terms and conditions of said agreement."

This action is brought to enforce the agreement. The defendant claims that, if the decree of the Nevada court is valid, the agreement was merged in it and no action could be brought upon the agreement as such.

This contention was not, so far as the record shows, raised by him in the trial court. No doubt an action would have lain to enforce in our courts the provisions of that decree; *German* v. *German*, 125 Conn. 84, 3 Atl. (2d) 849; and had the claim now made been raised in the trial court the plaintiffs might have been permitted to amend their complaint. No reason appears why we should not apply our usual rule that we will not consider claims not raised at the trial; on the contrary, the application of that rule here has definite justification. Practice Book, § 363; Conn. App. Proc., § 44.

The issue most discussed before us arose out of a ruling on evidence. At the trial the plaintiffs claimed that the Nevada decree conclusively established the validity of the agreement. The defendant proposed to offer evidence designed, as stated in his brief, to establish that the agreement was invalid because made to facilitate a divorce under such circumstances as to be within the condemnation of the law, and he further claimed that as this action was brought to enforce the agreement its approval by the Nevada court was irrelevant, and that if he was wrong in this contention he was entitled to offer evidence to prove that the Nevada court was without jurisdiction of the divorce proceeding. The trial court ruled that the validity of the agreement could not be attacked without impugning the decree of the Nevada court, and that the defendant could not do this. It refused to hear any evidence of the nature of that offered.

The defendant does not contend that the approval and adoption of the agreement by the Nevada court were not properly within the issues before it in the divorce proceeding as constituting a settlement of property rights between the parties and as embodying provisions for the support of their children; nor does he

claim that, if approved by it, there is any such difference between the public policy of the state of Nevada and this state with respect to such an agreement as would justify us in disregarding a decision of the Nevada court that the agreement was valid. See *Williams* v. *North Carolina,* 317 U. S. 287, 294, 63 Sup. Ct. 207. Under our law contracts between husband and wife made in settlement of their property affairs in view of divorce proceedings instituted or determined upon, if submitted to and approved by the court with full opportunity for scrutiny before the decree is entered, are not against public policy. *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 513, 18 Atl. (2d) 353. A determination that the agreement was valid was necessarily involved in the decree of the Nevada court approving and adopting it. *LaFrance* v. *LaFrance,* 127 Conn. 149, 154, 14 Atl. (2d) 739. The defendant does not claim that the fact that the minor child of the parties, beneficiary under the agreement, was a joint plaintiff with his mother in this action and the bank, as trustee, was joined as a party defendant produces such a change in parties that the Nevada decree would not in this action be res adjudicata as to that issue.

The plaintiffs claim that the decree of the Nevada court is not open to attack here upon the ground that the court lacked jurisdiction, relying mainly upon the recent decision of the Supreme Court of the United States in *Williams* v. *North Carolina,* supra. They misconceive the scope of that decision. The petitioners in that case had both been found guilty of bigamy in the North Carolina courts. Each had been married in North Carolina and had lived there for many years with his or her lawful spouse. Both went to Nevada and there secured divorces, upon notice in one case by publication and registered mail and in the other by a copy of the summons and complaint left with the de-

fendant, but without personal appearance by the defendant in either case. The state of North Carolina contended that since neither defendant was served with process in Nevada or entered an appearance the divorce decrees were not entitled to full faith and credit in North Carolina. The Supreme Court overruled that claim. In doing so it held that, while the Nevada statute requires, as a condition for securing a divorce, only that a plaintiff "reside" in Nevada a certain length of time, this meant that he or she must have a domicil there for that length of time; that there was no question presented as to the fact that the petitioners had had the requisite domicil in Nevada; that it was for Nevada to determine the conditions as to domicil which would be requisite to give its courts jurisdiction to grant a divorce; and that if those conditions were met a judgment of divorce granted by its courts would be entitled to full faith and credit in any other state; and it overruled *Haddock* v. *Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, in so far as it held (p. 570) that, if one spouse left the other wrongfully and went into another state, that state does not become a new matrimonial domicil so as to give its courts jurisdiction to dissolve the marriage relationship, the court taking the position that if the plaintiff had the domicil which was required by the laws of the state where the divorce was granted the circumstances of his leaving his spouse were immaterial.

In the *Williams* case the Supreme Court did not decide that a judgment of divorce secured in a state where neither party had a domicil was entitled to full faith and credit in other states. The decision was based on the assumption that the petitioners did have a domicil in Nevada; it was noted that the counsel for the state of North Carolina substantially conceded this to be so; the case was treated (p. 292) as if the "peti-

tioners had resided in Nevada for a term of years and had long ago acquired a permanent abode there"; and the court stated (p. 297): "Domicil of the plaintiff, immaterial to jurisdiction in a personal action, is recognized in the *Haddock* case and elsewhere (Beale, Conflict of Laws, § 110.1) as essential in order to give the court jurisdiction which will entitle the divorce decree to extraterritorial effect, at least when the defendant has neither been personally served nor entered an appearance." It did not decide that it was not open to the courts of one state in determining whether full faith and credit should be given to a judgment of divorce granted in another to inquire into the question whether the plaintiff in the divorce action had such a domicil in the latter state as was required under its laws to give its courts jurisdiction. It did not overrule *Andrews* v. *Andrews*, 188 U. S. 14, 23 Sup. Ct. 237, wherein it was held that a state is not obliged to enforce a decree of divorce obtained in another state wherein neither of the parties had a bona fide domicil, and (p. 39) that, in the absence of such a domicil, the appearance of the defendant was insufficient to confer jurisdiction upon the court when the decree was granted. Only passing reference was made in the *Williams* case to the decision in the recent case of *Davis* v. *Davis*, 305 U. S. 32, 59 Sup. Ct. 3, considered by us in *Schaeffer* v. *Schaeffer*, 128 Conn. 628, 25 Atl. (2d) 243, where it was held that, if a defendant appeared and actively contested the question of jurisdiction, the judgment of the court that it had jurisdiction is entitled to full faith and credit. Also, in the *Williams* case the court expressly eliminated from its consideration the question of the effect upon the credit to be given to the Nevada decree of proof in North Carolina that the judgment was the result of collusion between the parties. The ruling of the trial court in

the instant case cannot be sustained on the ground that it was not open to it to inquire into the question whether the plaintiff in the Nevada action had such a domicil in that state as gave its courts jurisdiction of the divorce proceeding. *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 92 Atl. 684; *State* v. *Cooke,* 110 Conn. 348, 148 Atl. 385; *Mills* v. *Mills,* 119 Conn. 612, 179 Atl. 5.

Both Hooker and his former wife married other persons subsequent to the divorce. The plaintiffs make the further claim that the defendant is estopped by his remarriage from attacking the divorce decree. There is something offensive to common decency in the position of one who, having procured a divorce or having voluntarily appeared as a party to the proceedings and raised no objection to the disposition of the case, subsequently remarries in reliance upon the decree and thereafter attempts to have it declared void on the ground that the court granting it lacked jurisdiction, with the result of making himself a bigamist, bringing contumely and disgrace upon the woman he has married and, if children have been born of the union, establishing their illegitimacy. If the issue in litigation where that is attempted directly involves the marital status, some courts have held that the public policy of the state where the suit has been brought and its obligation to uphold its standard as regards lawful marriage among its residents present considerations of such transcendent importance that, despite such unconscionable conduct, they will refuse to give effect to a divorce decree void for lack of jurisdiction. *Simmons* v. *Simmons,* 57 App. D. C. 216, 19 Fed. (2d) 690; *Jardine* v. *Jardine,* 291 Ill. App. 152, 9 N. E. (2d) 645; *Golden* v. *Golden,* 41 New Mex. 356, 369, 68 Pac. (2d) 928. Other courts have reached a different conclusion. *Norris* v. *Norris,* 200 Minn. 246, 273 N. W.

708; *Horowitz* v. *Horowitz,* 58 R. I. 396, 192 Atl. 796; *Goodloe* v. *Hawk,* 72 App. D. C. 287, 113 Fed. (2d) 753.

We are not called upon, in this case, to decide that question. Where the issue merely concerns the private property rights of the parties and the validity of the divorce decree is only incidentally involved, the considerations of the greater public policy to which we have referred lose weight and it is held upon high authority that the person who, in such circumstances, has remarried will not be permitted to claim that the decree is invalid for want of jurisdiction. *Krause* v. *Krause,* 282 N. Y. 355, 359, 26 N. E. (2d) 290; *Parmelee* v. *Hutchins,* 238 Mass. 561, 131 N. E. 443; *Bruguiere* v. *Bruguiere,* 172 Calif. 199, 155 Pac. 988; *Mohler* v. *Shank,* 93 Iowa 273, 281, 61 N. W. 981; *Arthur* v. *Israel,* 15 Colo. 147, 153, 25 Pac. 81; *Hamill* v. *Talbott,* 81 Mo. App. 210, 218; Restatement, Conflict of Laws, § 112; 1 Beale, Conflict of Laws, p. 479; but see *Szlauzis* v. *Szlauzis,* 255 Ill. 314, 319, 99 N. E. 640. In such a situation, the decision does not have the effect of establishing the validity of the second marriage. *Krause* v. *Krause,* supra; *Marvin* v. *Foster,* 61 Minn. 154, 160, 63 N. W. 484. While in some circumstances undoubtedly there would be a basis for finding an estoppel, the refusal to permit the attack upon the decree is not necessarily based upon that principle. *Krause* v. *Krause,* supra; *Langewald* v. *Langewald,* 234 Mass. 269, 125 N. E. 566. A sufficient basis upon which to rest that refusal in such a case as the one before us is that the defendant does not come into court with clean hands when he seeks to establish his affirmative plea that the decree is invalid for extraneous reasons. That he is not permitted to do. The law will leave the parties in the position in which it finds them, that is, divorced by the decree of the Nevada court. *Bouton* v. *Beers,* 78 Conn. 414, 62 Atl.

619; *Vaszauskas* v. *Vaszauskas,* 115 Conn. 418, 424, 161 Atl. 856; *Szlauzis* v. *Szlauzis,* supra. The ruling of the trial court refusing to receive the proffered testimony was correct.

The additional sums which the defendant agreed to place in trust for each of the children were to consist of one-sixth of such amounts as the defendant might, during the life of his mother, receive outright from her or as she might place in trust with income payable to him, and, if she should predecease him, one-sixth of such amounts as he might receive or become entitled to receive outright from her estate or as should be placed in trust under her will with income payable to him. The defendant now claims that the agreement is void as one for the transfer of an expectancy. In *Brown* v. *Brown,* 66 Conn. 493, 498, 34 Atl. 490, we said: "A naked possibility or expectancy of an heir to his ancestor's estate, or even of the anticipated rights of a person as next of kin, may be the subject of a contract in equity which will be equivalent to an assignment of the property if, and when, it shall fall into possession." This statement is in accordance with the great weight of authority where the agreement is fairly made upon adequate consideration and without oppression or unjust advantage being taken of the heir. Notes, 17 A. L. R. 601, 44 A. L. R. 1466, 121 A. L. R. 452. It is true that, in a few jurisdictions an agreement to transfer an expectancy of inheritance has been held at least presumptively invalid on the ground that it may work something in the nature of a fraud upon an ancestor who, unaware of it, may give or permit the inheritance of property when, with knowledge of the agreement, he might make other disposition of it. See *McClure* v. *Raben,* 133 Ind. 507, 511, 33 N. E. 275. There is, however, weighty authority to the contrary; *Gadsby* v. *Gadsby,* 275 Mass. 159, 166,

175 N. E. 495; *Gannon* v. *Graham,* 211 Iowa 516, 519, 231 N. W. 675; *Bridge* v. *Kedon,* 163 Calif. 493, 502, 126 Pac. 149; and most of the decisions wherein such agreements are upheld give no consideration to this element in the situation. Obviously such a ruling would be without foundation when the ancestor knew of the agreement and could make disposition of his property at his death in the light of that knowledge. *Curtis* v. *Curtis,* 40 Me. 24, 27. The danger that such an agreement will defeat his intent is not so great as to require that his knowledge of its existence be proved in order to render it valid. Nothing in the present record indicates that the defendant's mother was not fully apprised of the agreement, and, at least in the absence of any finding of want of knowledge on her part, we certainly cannot hold that it was void because of any fraud on her. As shown by the notes above referred to, it is generally held, at least in the absence of statutory provision, that the transfer of an expectancy has no standing in a court of law, and to make it effective resort must be had to equity. We have no statute in this state changing the common law in such a situation as the one before us, and our courts have jurisdiction in equity to enforce the agreement by compelling compliance with it. 1 Pomeroy, Eq. Jur. (4th Ed.), § 168; 1 Bogert, Trusts & Trustees, p. 353; notes, 17 A. L. R. 611, 121 A. L. R. 457.

The defendant, at the time the separation agreement was made, created a separate trust for each of his two minor children, Margaret and Edward, under an agreement with the defendant trust company. The younger of the two, Margaret, died under the age of twenty-five. He now claims that the trust for her has failed. The trust agreement in its first article contained rather elaborate provisions concerning the disposition of both income and principal and was divided into paragraphs.

The second paragraph made provisions for the use of the income until the daughter became twenty-five years of age. The third paragraph begins with the words, "As and when Margaret shall attain the age of twenty-five years, the Trustee shall thereafter pay the net income of the trust estate to Margaret during the term of her natural life; and upon the death of Margaret" the paragraph goes on to provide for the disposition of income and principal, in view of various contingencies which might occur. The contention of the defendant is that these provisions become effective only in the event that Margaret dies after attaining the age of twenty-five and that consequently no provision is made as to the use or disposition of the fund in the event which occurred, her death before reaching that age. If a literal construction is given to the words we have quoted, there is much force in this claim. We must, however, seek the intent of the creator of the trust by examining the instrument as a whole in the light of the circumstances surrounding its execution. *Mitchell* v. *Reeves*, 123 Conn. 549, 556, 196 Atl. 785.

In the separation agreement itself it is provided that "if either or both of said children shall die prior to the creation of the additional trust or trusts for his, her, or their benefit" the principal of the trust shall be disposed of in the same manner as it or they would have been disposed of had the child or children lived; and this provision is a clear indication that, no matter at what age a child should die, the obligation of the defendant to provide the additional trusts would continue. The second paragraph of the first article in the trust agreement contains a provision that in case Margaret should die under the age of twenty-five any income which might not have been used for her and has accumulated should be disposed of in the same manner

as the principal. The paragraph from which we have quoted contains a provision which unmistakably contemplates a succession to her rights should she die before reaching twenty-five; she was younger than her brother, but provision is made that upon her death the income of the trust should be paid to him until he reached that age. In a later article, it is provided that "In the event Margaret shall die before attaining the age of twenty-five years and the trust estate shall under the provisions hereof continue to be held in trust for Edward in whole or in part," or "In the event that both Margaret and Edward shall die before attaining the age of twenty-five years and the trust estate shall continue in whole or in part to be held in trust" for the then Mrs. Hooker, she is given the right to revoke the trust; and both these provisions clearly indicate an intent that the death of Margaret before she became twenty-five would not terminate the trust. Without laboring the point further, the instrument was clearly intended as a complete disposition of all interests in the principal and income of the trust, and the death of Margaret before becoming twenty-five was not intended to put an end to the trust for her. Had the word "and" been omitted and a new sentence been begun with the words "upon the death of Margaret" as they appear in the quotation we have made above from the beginning of the third paragraph, all question would have been obviated; and the manner of the statement affords too weak a basis upon which to defeat the clear intent of the instrument as a whole. *McCarthy* v. *Tierney*. 113 Conn. 316, 321, 155 Atl. 226. The death of Margaret before reaching the age of twenty-five did not cause a failure of the trust.

The defendant also claims that certain provisions concerning the disposition of the principal are void under the rule against perpetuities. An examination

of the instrument discloses no interest in income or principal which would not vest before or at the death of some person living at the time the separation agreement was made, and that is all that the rule requires. That at the death of one of the children his or her interest might shift to the other, and at the death of either, his or her surviving widow or widower might take an interest and his or her issue might also take, and that, in certain contingencies, on the death of both the children Mrs. von Mohrenschildt or the defendant or his heirs-at-law might become entitled to the principal, do not make the agreement void, for all the persons upon whose death interests would vest were alive when the agreement was made. *Bates* v. *Spooner*, 75 Conn. 501, 505, 54 Atl. 305; *Bartlett* v. *Sears*, 81 Conn. 34, 43, 70 Atl. 33; *Union & New Haven Trust Co.* v. *Ackerman*, 114 Conn. 152, 163, 158 Atl. 224; *Willis* v. *Hendry*, 127 Conn. 653, 671, 20 Atl. (2d) 375; *Armstrong* v. *Douglass*, 89 Tenn. 219, 224, 14 S. W. 604; 41 Am. Jur. 59.

Under the trust agreements, the only interest Edward has in the trust funds is that the trustee is required to apply the net income to and for his maintenance, education and support, either by delivering that income to his mother or, if she dies, by making the application itself. No funds would come to Edward while a minor which would give rise to the need of the appointment of a guardian of his property under the provisions of § 4799 of the General Statutes. See *Steinmann* v. *Steinmann*, 121 Conn. 498, 504, 186 Atl. 501.

The trial court was right in deciding that the defendant was obligated to comply with the provisions of the separation agreement. He claims, however, that it was in error in certain respects in determining the amount of the funds he was bound to place in trust

under the terms of the agreement. In order to discuss these claims it is necessary to state somewhat more extensively certain provisions of the agreement to which we have previously referred. It recited that the defendant has created "simultaneously with the execution of this agreement" two trusts in which the children were beneficiaries, and that it was the intention of the defendant that the provisions for them "shall in the future be augmented." To that end, he agreed:

"A. To place in trust for each of the said two children amounts equal to one-sixth (1/6) of such amounts as he shall hereafter receive outright from his mother, Mary M. Hooker, during her life and/or which his mother may hereafter during her life place in trust for him with income payable to Mr. Hooker for life or for any shorter period. Mr. Hooker hereby agrees to create said trusts in the stipulated amounts immediately upon the receipt of any of said property from his mother or upon the creation of any said trust by his mother.

"B. If Mr. Hooker's mother shall predecease him, upon completion of the administration of the estate of Mr. Hooker's mother but in any event not more than one year after the death of Mr. Hooker's mother, to place in trust for each of the said two children of the parties amounts equal to one-sixth (1/6) of the aggregate of the following:

(a) Such amounts as Mr. Hooker shall receive and/or shall be entitled to receive outright from his mother's estate after her death;

(b) Such amounts as shall be placed in trust for Mr. Hooker under his mother's will with income payable to him for life or for any shorter period."

The agreement further provided that the defendant should be credited "on account of his obligation under subdivisions A and B as follows: (1) With all amounts

received outright by each of said children from Mr. Hooker's mother or her estate; (2) With all amounts placed in trust for each of said children by either Mr. Hooker or his mother whether during life or by will."

In the first place, there is plainly no merit in the defendant's claim that under the last provision quoted he is entitled to have deducted from his obligation under subdivisions A and B the amount of the trust funds created for the children at the time the agreement was made. The creation of these trusts was an accomplished fact; they were to be "augmented" by the following provisions, which were to become effective in the future; the credits to be given for amounts received from Mr. Hooker's mother or her estate certainly referred to gifts in the future; and so must the provisions as to any amounts he might place in trust for the children. Had the intent been to give the defendant credit for the trusts already created against his obligations under subdivisions A and B, the tenor of the agreement would certainly have been very different.

The defendant's mother has died. After the making of the agreement she made small gifts to him on his birthdays, wedding anniversaries, at Christmas and on similar occasions, amounting in all to $2500. The trial court, in determining the amount he was obligated to place in trust, included that sum. The defendant agreed, as to amounts received from his mother during her life, "to create said trusts in the stipulated amounts immediately upon receipt of" the gifts. It is not reasonable to believe that every time the defendant received a small gift of money from his mother of the nature of those indicated he was to place one-sixth of it in trust for each of the children. He is right in his contention that the provision in question was intended to apply only to some substan-

tial amount received from her in the nature of a distribution of her property before her death. The trial court should not have included this item of $2500 in determining the defendant's obligation under the agreement. The defendant made a note for $27,500 and his mother took over this obligation, part of which was paid by her while alive and the remainder from her estate, and this amount also the trial court included in determining the defendant's obligation under the agreement. The word "outright" in subdivision A quoted above was evidently used to distinguish gifts made directly to the defendant and provisions in the nature of trusts for him referred to in the next clause. It is true that the agreement does not in terms include payments made for the defendant by his mother in discharge of debts he may have incurred. But, if such payments were excluded in determining the amounts he should place in trust, it would have been possible largely to defeat his obligation under subdivision A by his borrowing large sums and then inducing his mother to discharge the debts. That the payment by her of debts incurred by him should be regarded under the terms of the agreement as money received by him is necessarily implied in the terms of the agreement. *Leventhal* v. *Stratford,* 121 Conn. 290, 295, 184 Atl. 587; 17 C. J. S. 778, § 328. The trial court was correct in including the amount of the note in determining the extent of the defendant's obligation.

The defendant's mother died May 13, 1939, leaving a will under the provisions of which the defendant was given one-half of the principal of a trust fund of $30,000 upon the death of a life tenant to whom the income was bequeathed, and also, if he survived his mother, as he did, one-half the residue. In December, 1941, the executors filed an administration account from which it appears that the estate was substantially

ready for final distribution, the executors reserving, however, $24,000 for "final expenses: Probate fees, income taxes, etc." It also appears that during the settlement of the estate the defendant received $1000 monthly, called "support allowances," amounting in all to $29,000. The trial court, in determining the amount of the defendant's obligation under the agreement, rightly included this amount. Section 1584c of the General Statutes, Cum. Sup. 1935, provides that "The court of probate may allow out of any estate of a deceased person in settlement before such court such amount as it may judge necessary for the support of the surviving spouse or family of the deceased during the settlement of the estate." It does not appear that the payments to the defendant were made upon any order of the Probate Court. As far as the record shows, they were sums voluntarily advanced to him by the executors in anticipation of the final distribution to him of his share in the estate. *Carroll* v. *Arnold*, 107 Conn. 535, 540, 141 Atl. 657; *State* v. *Glens Falls Indemnity Co.*, 120 Conn. 178, 183, 179 Atl. 823. Except as hereinafter noted, these payments present the same situation as though their amount had been included in that distribution.

In arriving at the amount of the defendant's obligation under the agreement, the trial court added together the following items: certain cash advances made to the defendant during the settlement of the estate, amounting to $93,373.67; the items previously discussed—the monthly allowances to the defendant, the amount of the note paid by his mother and the sum of the small gifts made by her to him; one-half of the value as of May 13, 1940, one year after the date of the death of the defendant's mother, of the securities in the hands of the executors at the time the final account was filed. It arrived at the amount it found

due by taking one-third of the sum so determined, deducting an amount the plaintiffs claimed to represent one-third of the income received by the executors between May 13, 1940, and the filing of the account, and adding interest on the balance from May 13, 1940, to the date of judgment.

In using May 13, 1940, as the basis of its determination, the court acted under the provision in the agreement that the defendant "upon completion of the administration . . . but in any event not more than one year after" his mother's death, would place in trust for each of the children one-sixth of any amounts he might receive or be entitled to receive from her estate. This provision was aptly worded to meet a situation where he was bequeathed a definite sum by her, but it becomes more difficult of application where he is given one-half of the residue of her estate. While the rights of the beneficiaries of the trust no doubt accrued one year after her death, it was not then possible to determine the amount which the defendant was obligated to put in trust for them. The value of the securities in the hands of the executors on May 13, 1940, was in fact greater than their value when the account was filed, but it might be very much less than their value at the time of distribution, and the infirmity in the adoption of that basis for determining the amount due is apparent. In fact the judgment rendered is somewhat anomalous in that, while fixing the amount of the defendant's obligation as of May 13, 1940, it provides that no money is actually to be put in trust until the final distribution of the estate. The purpose of the requirement that the trust funds be set apart one year after the death of the defendant's mother was no doubt to assure to the beneficiaries the income from that date. As regards the assumption of the defendant's debt by his mother, interest should be

added from the date of that assumption; and in so far as the defendant received sums from the estate in advance of distribution he should have placed in trust one-third of those received during the first year at the expiration of that year and one-third of the sums thereafter received at the time they were received; and interest should be added to these sums from those dates. But because the further amounts he would ultimately receive could not be ascertained on May 13, 1940, there would be no basis upon which interest upon them could be calculated. The intent of the agreement can best be effectuated by provisions in the decree that on the final distribution of the estate there shall be placed in trust one-third of the amount of the debt assumed by the defendant's mother and one-third of the sums received by the defendant from the estate in advance of that distribution, with interest on these items as before stated; also one-third of one-half of the residue aside from income received by the estate during its administration, with the addition of one-third of one-half of the income received by the executors since May 13, 1940. The inclusion of this income will give effect to the intent that the beneficiaries are to have the income of the trust from one year after the death of the defendant's mother.

We should perhaps add this: Under the agreement, the defendant at the time of trial had become obligated to place in trust one-third of the debt assumed by his mother and of the sums which had been received by him in advance of final distribution. As regards these sums, the defendant was in default; and judgment might have been rendered directing that he put them immediately in trust, but no complaint is made of the postponement of payment until the distribution of the estate. While, under our interpretation of the agreement, the part of the residue which the defendant

is obligated to place in trust is not payable until final distribution, the•defendant does not claim that a court in equity might not properly render a present decree of such a nature that it will protect the interests of the beneficiaries of the trusts by securing to them the trust funds at such time as they do become payable.

There is error in part, the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiffs modified so far as to make it accord with this opinion.

In this opinion the other judges concurred.