The accused and Helen D. Irwin were married in Windham, Connecticut, on August 23, 1935, and later took up their residence in Groton, where the accused was employed by the Electric Boat Company prior to July, 1944, as a chief guard, receiving compensation averaging about $70 per week. They have one child, a daughter, now eight years old. The information charges that the accused on the 20th day of June, 1944, and for a long time subsequent thereto did "neglect, refuse and fail to support his wife and one minor child in violation of § 1702c of the 1935 Cumulative Supplement to the General Statutes of Connecticut." To this information the accused has pleaded not guilty and claims that on November 15, 1944, he was divorced from his wife by a valid decree entered by the Circuit Court for the County of Volusia, State of Florida, and that prior to said divorce decree he had furnished reasonable support for his wife and child.
Early in 1944 marital difficulties reached an acute stage and the accused informed his wife that he was going to Florida to obtain a divorce. The accused left his wife in February, 1944, and in March, 1944, while still in the employ of the Electric Boat Company, he went to Florida, and on March 16th filed with the clerk of the Circuit Court for Volusia County a sworn statement in which he asserted that he maintained a place of abode at Daytona Beach which he recognized and intended to maintain as his permanent home. He remained at Daytona Beach three days and then returned to Groton and continued in his employment at the Electric Boat Company. On July 2, 1944, the accused again left Groton and went to Jacksonville, Florida, and on July 5th executed another sworn statement in which he stated that he maintained a place of abode in the City of Jacksonville, County of Duval, which he intended to maintain as his legal residence and permanent domicile. This instrument was filed with the clerk of the Circuit Court, Duval County, on July 12, 1944. On or about October 5th the accused filed a bill for divorce in the Circuit *Page 269 
Court of Florida, Seventh Judicial District, in and for Volusia County, and his wife in Groton was served with a summons by registered mail, but made no attempt to appear and defend the action because of the lack of necessary funds. On November 16, 1944, the Florida court entered a decree, in favor of the accused, of absolute divorce from his wife upon the grounds set forth in his bill of complaint, which grounds do not appear in evidence in this case. Upon the entry of this decree of divorce, the accused resigned from his employment as a guard at St. John's River Shipbuilding Company in Jacksonville and also gave up his lodging quarters before leaving Jacksonville. On November 19th the accused left Florida with all his personal belongings and returned to Groton, where on November 20th he saw his wife, told her he was divorced, that he would aid in the support of his child, but would refuse to support her.
The facts appearing in the evidence make it entirely clear that the accused left Groton in July and went to Florida for the sole purpose of securing a divorce from his wife and without an intent either to abandon his domicile in Groton or to acquire a bona fide domicile in Florida. At all times during his absence from Groton between July 5th and November 19, 1944, it was the accused's intention to return to Groton immediately upon securing a divorce. Such intent is clearly manifested by the letter dated October 30, 1944, which the accused wrote to R. B. Pettengel, Superintendent of Plant Protection at the Electric Boat Company, in which letter he specifically stated that he expected to return to Groton November 20th and must find something to do, and that he "was wondering what the possibilities were of getting the old job. Am in good physical condition and rather anxious to get going again." This letter written by the accused about fifteen days before the entry of the divorce decree taken in connection with the other facts and circumstances in evidence, establishes beyond a reasonable doubt that the accused's domicile in Florida was colorable only and that he had acquired no such domicile as would confer jurisdiction upon the Florida court to grant a divorce having extraterritorial validity. "A state cannot exercise through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state." Restatement, Conflict of Laws § 111. There is no sufficient evidence in the case to permit a finding of the existence of the required elements for the establishment of a domicile on the accused's part in the State of Florida, and *Page 270 
it follows, therefore, that the court of that state was without jurisdiction, extraterritorially, and so far as this State is concerned, the judgment was a mere nullity. Gildersleeve vs.Gildersleeve, 88 Conn. 689; State vs. Cooke, 110 id. 348; Millsvs. Mills, 119 id. 612.
The recent decision of the United States Supreme Court inWilliams vs. North Carolina, 317 U.S. 287, does not prevent the State in this action from questioning the validity of the Florida decree on the ground that the Florida court lacked jurisdiction to enter the decree. Hooker vs. Hooker, 130 Conn. 41,47; Boyarsky vs. Boyarsky, 12 Conn. Sup. 143, 146.
While it is true the defendant made some provision toward the support of his wife and child for the period between July 5th and November 20, 1944, it appears that such provision was inadequate and that the wife was obliged to seek employment in order to provide reasonable support for herself and child.
 The accused is therefore found guilty as charged in the information.